LIVINGSTON, J.
delivered the opinion of the court. In our opinion the judgment rendered on this verdict is erroneous, and must be reversed.
Without denying the general principle (which is too well settled to admit of controversy) that unless the legislature provide for the protection of officers of this discrip* tion, they act at their peril, although their conduct be bona fide,, and according to the best of their judgment, there are, in this case, sufficient.marks of distinction to justify our not adding it to the revolting precedents which are already to be found on this subject. In making use of this term, I do but little more than follow the example of most judges who have been called on to enforce a rule which they admit to be a hard one, and against the operation of which, modern legislators, unless from oversight, generally take care to guard. The whole court, in the case of Warne v. Varley, seem solicitous to discover some ground on which the defendant, who had acted fairly and bona fide, might escape. This liability *was first enforced against officers who acted as volunteers,, and generally received a portion of the spoil. These were collectors and excise officers, who were neither bound by oath, nor enjoined by law, to make seizures, but might do so or not. as they pleased. Thus in Imay v. Sands, 1 Caines’ Rep. 566, decided in February term, 1804, the defendant, who was collector of the port of New-Tork, in, seizing a vessel, with a very valuable cargo, was under no legal injunction to do so, and would have been entitled to a very considerable share of the proceeds arising from confiscation. In such case there is no rigor in letting an officer act at his peril, and m putting his justification on the event. But when persons in a public capacity act upon oath, in matters too which require skill and experience, and in which men may honestly differ in opinion, it seems cruel not to protect them when they conduct themselves with integrity, and without abusing their authority, or manifesting any symptoms of malice. But this alone, if the case of Warne v. Varley be a precedent, affords no justification. Some other excuse, then, must be found for the plaintiff, or he cannot escape. Let us, then, see wliether, in the terms of the law, an ample justification will not be found, and such a one as the court of king’s *315 bench seemed willing to admit in the case just mentioned. The defendant there pleaded that he had seized the leather because, “ in his judgment, the same was not well dried.” But the act of parliament had not given him authority to seize, what, in his judgment, was not sufficiently dried, but- only generally to seize leather of that description, without referring to his judgment at all. If it had, Lord Ken-' yon. would not have held him liablg. “It seems reasonable,” says he, “that if these searchers exercise their authority bona fide, and only seize such leather as in their judgment ought to be examined, they should be protected, but the act of parliament affords them no such projection.” From this mode of expression, as well as from the reason of the thing, it is clear, that were the judgment or opinion of the officer expressly referred to by law, as the rule of his conduct, he cannot, and ought not, to be answerable for an upright use of it, but is as much protected by a clause of this kind as by those which are usually introduced for this purpose. This reference will be found throughout the law under which Seaman acted, and must have been made to prevent his being harassed by demands of this nature. Every thing almost which, as inspector-general, *he is to do, is to depend on his judgment or opinion. He swears “ he will faithfully and impartially, according to the best of his ability, perform his duty, without any wilful omission, neglect, or delay whatever.” It is not a little extraordinary, that when the legislature exact no more of a man than an exertion of his best abilities, he should still be responsible, merely because another may have more ability or capacity than himself?
The fourth section authorizes him to remove without the city all such beef and pork as shall appear to him to be in danger of spoiling, &c. "Will it be said that he would also be liable, if he should bona fide order any of these articles to be removed, if it turned out that they were in no danger of spoiling ? Shall it be his duty to remove these articles ; shall he swear that he will perform his duty; nay, *316 'shall bebe liable to a heavy penalty for neglect, and shall his own opinion be made the only criteron of the necessity or propriety, and shall he not dare to exercise it? So, ' again, in the same section, he is to order beef or pork, in a putrid state, to be removed, if in his opinion the removal be necessary. Surely it would be a satisfactory defence to an action, on this part of the statute, to say that the removal in his opinion .was necessary. Why vest such power in him, as a security for the health of the city, if he be not to use it ? If too latitudinary, the legislature, and not he, is to blame. Again, by the first section he may remove certain provisions, if in his judgment it be proper. The eleventh section, in like manner, (and this applies more immediately to the present action,) declares that the barrels, -in which beef shall be repacked, (which must, of course, be judged of before they can be inspected,) shall, in the opinion of the inspector-general, be every way strong, and tight enough to prevent the pickle from leaking out. Now, if this be an action for not inspecting the beef, and it can be no other, notwithstanding the inaccuracy of the return, calling it an action for condemning the property, which the inspector could not do, who can say that the plaintiff was of opinion that the barrel was as tight and strong as it ought to be ? If he were not, it was his duty, however incorrect the opinion may have been, to refuse its inspection; for it must be an incontrovertible position, that when by law it is made the duty of a a public agent, however high or low his station, to do a thing, if in his opinion certain requisites are complied with, he can never be liable for omitting to act, (which it *is attempted to make him here,) without proving corruption, malice, or some misbehavior. It does not appear why the beef was refused. It may have been for the very cause just mentioned, which would be a complete defence. But if the inspector proceeded on the ground, as it would seem he did, of the barrel’s not being branded with the name of the person who made it, he was also justifiable. The sixteenth section is *317 explicit on this point, and it is admitted no such brand appeared. An offer to brand was not sufficient. It is idle to say that the inspector-general refused to’ let it be done. He had no control over the cooper, or the cask. The defendant might have taken it away, and returned it properly branded. On this point the justices were also mistaken. The party, to entitle his beef to inspection, should have taken care to have put it in the state required by law. Until that was done, the inspector had nothing to do with it, or with his offers. But if the cask had been properly branded, the inspector had a right, by law, if he thought proper for other reasons, to refuse its inspection, and this is the ground on which we proceed. There is yet another distinction between this action and those which are generally brought against public officers. The latter are almost always actions for some tort, such as seizing the plaintiff’s property, or breaking into his house, or the like ; whereas this is an attempt to charge him, not for a sin of commission, but for one of omission. It may well be doubted whether this alone would not justify our deciding it on principles different from those which have heretofore governed, in the cases referred to. But without pursuing this inquiry, our opinion is, that an officer, acting under a commission from government, who is enjoined by law to the performance of certain things, if in his judgment or opinion the requisites therein mentioned have been complied with; and inhibited, under the like exercise of his own discretion, from doing other things; who is sworn to discharge these duties to the best of his ability, and exposed also to penalties, as well for negligence as for acting where he ought not, is not answerable to a party, who may conceive himself aggrieved for an omission arising from mistake or mere want of skill, if there be no bad faith, corruption, malice, or some misbehavior, or abuse of power. Nothing of the kind appearing here, the judgment must be reversed.
Judgment of reversal.