STEPHENSON *vs.* HALL AND VAN ORNUM.

An action will not lie in behalf of a parent, against the trustees of a school district, to recover damages against them for expelling and excluding the plaintiff's minor child from the common school; nor for the damages sustained by the parent in bringing an appeal to the state superintendent of common schools to get such child reinstated in the school.

If any action can be maintained, in such a case, it must be in the name of the child, and for his or her benefit.

In no case can a parent sustain an action for an injury to his child, unless some actual loss has accrued to him, or he has been subjected to the violation of some right, from which a possibility of damage may arise. *Per* C. L. ALLEN, J.

THIS was an action commenced in a justice's court of St. Lawrence county by Stephenson, against the defendants and Epaphroditus Buck. The plaintiff complained in writing as follows : " For that Mary Jane, the minor daughter of the plaintiff, and over the age of *five*, is an actual resident of joint school district No. 15, in the towns of Russell, Edwards and Hermon, in the county of St. Lawrence, and that as such was entitled to attend the common school held and kept in the school house in said district. That on or about the 10th day of June last, the defendants, under the pretense of the office of trustees, *wrongfully, wilfully and maliciously*, and without any cause or provocation, ejected, expelled, forbade, refused and forcibly excluded the said Mary Jane from participating in the arts, *sciences* and instructions, then and there being taught in said school house, to the damage of the plaintiff of $25; and the plaintiff asks judgment against defendants for further damages, which he has sustained in bringing an appeal to the state superintendent of common schools of New-York, to get the said Mary Jane reinstated in said school, and for his trouble, costs and expenses in the prosecution of this action, to the amount of other $25; whereupon the plaintiff asks judgment for $50,00." The defendants denied the allegations in the complaint, and further answered that they were "the trustees of the said district mentioned in the plaintiff's complaint, and that the daughter of the plaintiff, therein mentioned, attended said school, but was guilty of gross misconduct, and

Stephenson *v.* Hall.

refused to be governed by the wholesome and necessary rules of said school by viciously disregarding its rules, and corrupting the morals of the pupils, and that the expulsion complained of was only till she would consent to submit to necessary order." The cause was tried by a jury in August, 1851. On the trial the plaintiff proved by his son William, that Mary Jane, his daughter, resided with him, in the school district mentioned in the complaint. A difficulty had arisen between the school teacher and Mary Jane, who was about 13 years of age, and who had attended the school, but who had left, or had been excluded in consequence of the difficulty. The teacher complained that Mary Jane had improperly interfered, while she (the teacher) was punishing a child of the witness about five years of age; that she also charged the plaintiff's daughter with making up faces at her, and of making a noise like something on a slate, while the teacher was hearing a class recite; that she directed her to stop the noise, and she did so. Mary said she did not make the noise on the slate, only what she made in cyphering. On Friday the 10th of June an interview was had between Van Ornum and Hall and the witness, and the affair was talked over. It was finally concluded that she might return to the school. On the Monday following, the witness and the two defendants had another interview; the witness went with his sister to the school house, where he found Van Ornum sitting on one side of the door and Hall on the other. They told Mary Jane she must not go into the school. One of them held the door, and would not let her go in. The witness showed them some decisions of the state superintendent. They said they did not care any thing about the superintendent's decision, she could not go into the school. The town superintendent came there shortly after, and they went to the school house and again talked the matter over. The teacher would not be satisfied, unless Mary would acknowledge that she scratched the slate. Mary answered that she would not acknowledge a lie for any body; she said she was to blame for interfering with the teacher, and was willing to obey the rules of the school. It appeared that the plaintiff

had appealed to the state superintendent, who had made a decision to the following effect, dated July 28, 1851.

"The trustees of district No. 15, of the town of Russell, are hereby directed to reinstate Mary Jane Stevenson, late a pupil of said school, in all the privileges of said school, on the engagement of her parents that she shall in future in all respects conform to the rules and regulations of the school, and on her own undertaking to do so.

"Given under my hand and the seal of the office of the secretary of state.   (*Signed*)      CHRISTOPHER MORGAN,
              "*Superintendent of Common Schools.*"

The costs and trouble of bringing this appeal the witness stated to be $5. It was proved that at the time of the interview spoken of by Wm. Stevenson, the trustees told Mary Jane that they did not wish to turn her out of school, but they desired her to make satisfactory acknowledgments and return to the school, and it was finally proposed that she should say that whatever she had done that was wrong, to the school or to the teacher, she was sorry for, and would obey the orders of the school in future. Her father, the plaintiff, said "that is right; do it. I bid you do it." She said she could not do that, without confessing a lie. The defendants then said she must leave the school. Mary Jane was kept out of school eight or nine weeks. Buck, the other defendant, was called and testified that he had never been notified to attend any meeting of the trustees, was not present at either of the interviews, and took no part at all in the matter. After the testimony was closed, on motion of the plaintiff, Buck was discharged from the action.

The jury found a verdict for the plaintiff for $5 damages, for which, with $5 costs of suit, the justice rendered judgment. An appeal was taken to the county court of St. Lawrence county, which affirmed the judgment of the justice, and the defendants appealed to this court.

*T. V. Russell*, for the appellants.

*W. C. Cooke*, for the respondent.

Stephenson *v.* Hall.

*By the Court,* C. L. ALLEN, J.   I have searched in vain for a precedent sustaining an action of this character.  I believe it is the first attempt of the kind that has been made in our courts of justice.  It is perfectly clear that if the injury complained of is one personal to the child, then she alone can sustain an action.  In actions for assault and battery upon the child, whenever they have been brought by the parent, they have been sustained upon the ground of the loss of service to the parent; and in all such cases, the question of damages has been confined to the *actual loss* to which the plaintiff has been subject.  Thus in *Whitney* v. *Hitchcock,* (4 *Denio,* 461,) where the action was brought by the parent for an indecent assault upon his child, resulting in no personal injury so as to deprive the parent to a serious extent of her services, the court held the plaintiff could only recover for the actual loss he had suffered, and a verdict of $300, which had been rendered by reason of the aggravated circumstances of the assault, was set aside, the court holding that the injury in that character was personal, and that the child could maintain her action.  So in *Loomis* v. *Cline,* (4 *Barb.* 453,) it was held that a father has no authority, arising from his paternal relation alone, to commence an action in behalf of his daughter, for an assault and battery committed upon her; that he could neither release nor compromise her right of action for a personal injury.  Without going into a minute examination of the numerous cases which may be found on this subject, it is sufficient to remark, that the principle to be deduced from them all is, that in no case can a parent sustain an action for an injury to his child, unless some actual loss has accrued to him, or he has been subjected to the violation of *some* right from which a *possibility* of damage may arise.  (*See* 2 *Carr. & Payne,* 578; 15 *Wend.* 635; *Reeve's Domes. Rel.* 291; 3 *Comst.* 493; 20 20 *Wend.* 210.)

Now what loss in this case has the plaintiff sustained, in consequence of the act complained of ?  It is not pretended that any personal injury was inflicted upon the child, in consequence of which he was deprived of her services.  It is not claimed that the plaintiff sustained any personal mental loss, because his

daughter was deprived of the benefit of eight weeks' schooling. The complaint alledges, "that Mary Jane, the minor daughter of the plaintiff, and over the age of five years, is an actual resident of the district, and as such was entitled to attend the common school held and kept in the school house in said district. That on or about the 10th of June, (1851,) the defendants, under the pretense of the office of trustees, wrongfully, wilfully, maliciously and without any cause or provocation, ejected, expelled, forbade, refused, and forcibly excluded the said Mary Jane from participating *in the arts, sciences and instructions* then and there being taught in said school house, to the damage of the plaintiff of $25; and plaintiff asks judgment against the defendants for further damages which he has sustained in bringing an appeal to the state superintendent of common schools of New-York, to get the said Mary Jane reinstated in said school, and for his trouble, costs and expenses in the prosecution of this action, to the amount of other $25; whereupon the plaintiff asks judgment for $50."

One claim for damage therefore is, that the defendants, under pretense of being trustees, forcibly, wilfully and maliciously excluded Mary Jane from participating in the arts, sciences and instructions then and there being taught in said school house. How extensively the arts and sciences were there taught, does not appear, but what injury or damage has the plaintiff sustained by reason of the exclusion of his daughter from those privileges? If any injury has arisen in consequence of that act, is it not personal to the daughter, who has been deprived of the opportunity of improving herself, and enlarging her own mental graces, for the period that she was required to be absent from the school? It appears to me there can be but one answer to this question, and that, if any action at all can be maintained in this case, it must be in the name of the daughter, and for her benefit. Can it be said that the plaintiff had an interest as well as a right to have his daughter in the school, that by reason of the education she was receiving, she was being prepared to render herself more useful, and that her services during her minority would thus become more valuable to her parent? This would be carrying

the doctrine much too far, in my opinion, in order to sustain an action of this kind—an action clearly not to be favored, unless in support of an undoubted principle of law.

The counsel for the respondent, while he seems to perceive, and rather concede, the difficulties in his way, argues that the defendants violated a *right* of the plaintiff in expelling his daughter from the school, and in refusing to allow her to attend the school; that she was a resident of the district, and that she was entitled to participate in the benefit arising from the *public money*, and as such must necessarily have been included in the trustees' annual report; and that therefore the defendants had no right to dismiss her without reasonable and just cause; that the plaintiff had an interest that his daughter should enjoy the benefits of the public money, which would necessarily lessen his expenses in educating her; and that to educate her was a duty devolving upon him.

At common law the parent was not required to educate his children, and the municipal laws of most countries are a little defective on that point. The laws of England make a wise provision in case of poor and indigent children, where they may be taken out of the hands of their parents by the statutes for apprenticing poor children, which provides to a certain extent for their education. (1 *Black. Com.* 451.) But the rich, or those enabled to support their own families, are left at their own option, "whether they will breed up their children to be ornaments or disgraces to their family." So in this state, the county superintendents may bind out any child sent to the county poor house, and are required, in case of such binding, to have a clause contained in the indentures, by which the person to whom such child shall be bound, shall agree that he will cause such child to be instructed to read and write; and if a male, to be instructed in the general rules of arithmetic. (1 *R. S.* 186, § 155.) But our statutes do not require the parent to educate his children. "Still it is a moral duty," as Blackstone well observes, "of far the greatest importance of any, of parents to their children, to give them an education suitable to their condition in life; for it is not easy to imagine or allow that a parent has conferred any considerable

benefit upon his child, by bringing him into the world, if he afterwards entirely neglects his culture and education, and suffers him to grow up like a mere beast, to lead a life useless to others and shameful to himself." This duty, however, is one owing to and for the benefit of the child, the omission or neglect to do which is the personal loss of the child. So the opportunity afforded by the parent, if the child is deprived of it by the acts of others, the loss being personal to the child, he or she can alone maintain the action, as in the case of assault and battery.

It is said the parent's loss was a pecuniary one, inasmuch as the child's right to participate in her share of the public moneys would lessen the expenses of the plaintiff in educating her. The act passed 26th March, 1849, to establish free schools throughout the state, took effect 1st January, 1850. The first section declares as follows, "Common schools in the several school districts in this state, shall be free to all persons residing in the district, over 5 and under 21 years of age," &c. Section 8 repeals all laws inconsistent with the provisions of the act. Mary Jane, by virtue of this act, had the full right, as well as all other children within the district, of the required age, to attend this school, and the plaintiff, as an inhabitant of the district, was subject to his share of the school tax prescribed by that act, whether she attended the school or not. It does not appear, and I believe is not pretended, that she attended any other school during the time she was absent from the district school, or that the plaintiff was subject to or incurred any expense whatever during that period.

It is argued that no question was raised on the trial; that no objections were taken to the testimony, nor to the rule of damages, and that all questions of fact are settled by the jury, who have found that the child was improperly excluded from the school, and without reasonable cause. I do not understand this to be exclusively the rule. Where the complaint in a justice's court does not set forth a cause of action, the defendant is entitled to judgment, though he takes issue instead of demurring. Thus, where a trial was had in such a case, and the defendant moved for a nonsuit, upon grounds which could not be sustained,

overlooking the real objection, it was held no ground for sustaining the judgment; the court remarking in that case, that though they would overlook defects in form and substance, where a good cause of action was proved, yet if any material part of a plaintiff's case is not made out, a judgment in his favor will be reversed. ( *Tifft* v. *Tifft*, 4 *Denio*, 175.) The return of the justice, in such a case, is not to be treated as a bill of exceptions. It partakes more of the nature of a case, to set aside a verdict or report of referees. In such cases the whole case is to be examined, and if no cause of action exists or is proved, a judgment cannot be sustained. (5 *Barb*. 283, 285.) I am clearly of opinion, therefore, that the plaintiff cannot sustain this action.

It is contended that the plaintiff sustained damages by reason of the expense and trouble to which he was subjected, by his appeal to the superintendent, who ordered his daughter to be reinstated in the school. It may be answered that this expense, if any is proved, was voluntarily and unnecessarily incurred, and was such as no provision is made for by law. The superintendent, it is true, ordered the daughter to be reinstated in the school, but it was on the very condition, substantially, which was required by the defendants, and a compliance with which, by her, would have saved her the necessity of absenting herself from the school altogether. The judgment of the superintendent was in effect an approval of the proceedings of the defendants, and a declaration that their act had been proper. The claim for damages, on this point, would not only seem therefore to be without foundation, but the decision of the superintendent on the appeal might well be argued as a decisive answer, and insisted upon, not without plausibility or reason, as a defense to the action. I do *not say that it would be a bar*, as I have not sought to place the decision on that ground; but I am by no means disposed to conclude, without further examination, that it would not interpose a serious obstacle in the way of the plaintiff's recovery.

Be this as it may, if the other position which I have assumed be correct, then the plaintiff is not entitled to recover for this item of damages, in this action—conceding that he might be en-

titled to recover the expenses of the appeal, if his complaint had been properly framed—by mixing up that claim with a cause of action for which he was not entitled to prosecute, to wit, the child's loss of instruction; and a general verdict having been rendered on both, the judgment, for that reason, cannot be sustained. This has been repeatedly adjudged, and needs no argument at this day in its support. (4 *Denio*, 453. 5 *John.* 430.)

These views of the case render it unnecessary to examine the other points which have been raised and presented in the cause. I will observe, however, that it is undoubtedly true, as remarked by the counsel for the appellant, that trustees have the power, and it is their duty, to dismiss or exclude a pupil from their school when, in their judgment, it is necessary for the good order and proper government of the school so to do. It has been recommended by more than one of the state superintendents, commencing with Gen. Dix, that the power to exclude an unruly member from a school, is one which should not be exercised by the teacher, but that the aid of the trustees should in all such cases be called in. This was done in the present case. The defendants were the trustees of the district. The teacher had invoked their aid. In no unfriendly manner, it would seem, towards the plaintiff or his daughter, did they approach to what they believed to be the discharge of an unpleasant duty. The allegation of malice and corruption on their part, was not only unsupported by the proof, but wholly disproved by the evidence. The defendants endeavored kindly and tenderly to induce the daughter to acknowledge that she was in the wrong. All that was required of her was to say, "that whatever she had done that was wrong to the school or to the teacher she was sorry for, and that she would obey the orders of the school in future"— the plaintiff himself remarking at the time, "*that is right; do it. I bid you do it.*" The daughter, by her refusal to comply with what was admitted by the plaintiff to be a reasonable act, absents herself from the school, and on appeal to the superintendent is reinstated, *only on the terms required by the defendants.* And it is for this act that this action is sought to be maintained; and under this state of facts the jury have found

Stephenson v. Hall.

that the defendants acted maliciously. It was necessary for them so to find to maintain their action, as the complaint avers malice. The finding, it appears to me, is wholly without, or at all events against, the weight of evidence, and cannot be supported. I know it is urged in answer to this branch of the defense, that even if all the trustees had a right to dismiss the child, two of them had not, without the concurrence of the third, or unless he had been notified and refused to act, and that in this case the testimony is positive that the third trustee had never been notified and never acted. The cases undoubtedly are, that where a power is delegated to trustees, it is to all three; and in order to make the act valid, all three must have met and consulted, or have been notified, and refused to attend. (*Downing* v. *Rugar*, 21 *Wend.* 173. 23 *Id.* 324. 9 *Id.* 17, *and various other cases.*) It is clear that only two of the trustees acted here, and if the defense rested on this ground alone, it might be doubtful if the defendants could avail themselves of it. They acted without jurisdiction and might be liable, though they professed to act judicially. (5 *Barb.* 607, *and other cases not necessary to cite.*) They undoubtedly, however, acted in good faith, without malice, believing they were discharging a duty imposed upon them by law, and reasonably and kindly endeavoring to execute it. They had no personal interest to gratify or benefit. They were acting for the public, without salary or reward. Their motives seem to have been praiseworthy, their object to preserve good order and regularity in the government of the school, which its welfare demanded. They acted, as they believed, judicially in a matter of discretion pertaining to the duties of their office. If they erred in judgment under such circumstances, they ought not to be liable to an action. (8 *Wend.* 180, 464. 2 *Caines*, 312. 6 *Cowen*, 276.) And they would not be in this case, unless technically so, because the third trustee did not act with them. To subject them to damages in a case like the present, where, if they have erred at all, they have done so innocently and in good faith, would be unreasonable, and nothing but a strict compliance with technical rules of law would seem to require it. But the application of these rules is

rendered unnecessary by the first view which I have taken, which I think conclusively disposes of the case in favor of the defendants.

I am of opinion that the judgment of the county court, and of the justice, should be reversed.

Judgment reversed.

[FULTON GENERAL TERM, September 6, 1852. *Willard, Hand, Cady* and *C. L. Allen,* Justices.]