WILLIAM H. TEGARDEN v. McBEAN & KIBBEE.

1. ROADS AND HIGHWAYS: TEST BETWEEN PRIVATE AND PUBLIC.—By the Constitution and laws of this State, "full jurisdiction over roads, highways," &c., is vested in the Board of County Police; and they are required and furnished with ample means to keep the public highways in repair. The liability of the Board of Police to keep a road in good repair or not, is therefore a good test to determine whether it is a public or private road. See *The State* v. *Gregg*, 2 Hill R. (S. C.) 388; *Smith* v. *Kinard*, Ib. 642.

2. SAME: DEDICATION OF: TO THE PUBLIC.—The permission of the proprietor, that a part of his land, not situated in a city or town, may be appropriated as a public road, and the use of it as such by the public, for a shorter time than is necessary to create a title by prescription, if it be not adopted as a public highway by the Board of Police, does not constitute such a dedication as will vest the absolute right to it in the public, and divest the owner of the land of his right to resume the use of it, and obstruct travel over it, at his pleasure.

3. SAME: PRESCRIPTION.—The uninterrupted use by the public, with the permission of the proprietor, of a part of his land as a public highway, for a period of six years, will not establish a right in the public to the road, by prescription.

APPEAL from the District Chancery Court, at Mississippi city. Hon. B. C. Buckley, vice-chancellor.

In November, A.D. 1854, the appellant filed his bill in the court below, against the appellees, the object of which was to cause the removal of certain obstructions, which it was alleged they had put in a public road, and to enjoin them from further obstructing the same.

The material facts as they appear from the record, are, that in the year 1848, William McMasters was the owner of the land over which the road now passes, and also of certain other land adjoining the same; that in that year the complainant proposed to establish a ferry across Bayou Bernard, in Harrison county, and also to build a road leading to the same, and connecting with other roads leading to Mississippi city and Biloxi. That he informed said McMasters of his purpose, and applied to him to purchase the land immediately on the Bayou, which was necessary for the use of the ferry, and at the same time informed him of the neces-

Tegarden *v.* McBean & Kibbee.

sity of a road across the remainder of his land, leading to and from the ferry, to the proper use and enjoyment of the same. That McMasters was anxious for the establisment of the ferry, and the building of the road as proposed by complainant, deeming them of value to the land owned by him, and not proposed to be purchased by the complainant; and he agreed and consented that the road should be built over his land, on the route on which it was afterwards actually established; and the proprietors of the adjacent lands over which the road was established, also consented to the appropriation of their lands for that purpose. That in consideration of this agreement and consent on the part of McMasters, complainant bought the land necessary for the ferry; that in the latter part of 1848 or the first of 1849, complainant established the ferry, and at his own expense, built the road in controversy across McMasters' land, throwing up a high embankment over a boggy marsh at great expense; that the road was so built for the benefit of complainant, and also for the use of the public, who were at that time in great need of it. That the public have used the road so built from that time, to within a short time before the filing of the bill, when the further passage thereof was obstructed by the defendants, who had about two years before that time bought the land from McMasters; that defendants, after they had bought from McMasters, procured a charter from the legislature for the building of a bridge across Bayou Bernard, at a place distant from complainant's ferry about eighty yards; that until they had completed their bridge, they did not object to the use of said road by the public, but that soon after its completion, they placed in it the obstructions complained of.

It also appeared, that the Board of Police of Harrison county, had granted a license to complainant to keep the ferry owned by him, and that he kept the same for the use of the public free of toll, but it did not appear that the said Board had adopted the road in controversy, or had ever exercised any jurisdiction over it.

Upon the final hearing the vice-chancellor dismissed the bill, and the complainant appealed.

*John Henderson,* for appellant.

1st. It is objected that this road was not dedicated to public use.

A dedication to public use requires no formality, the fact only is essential. 2 Strange R. 1004. Consent that others may lay out the road is a dedication. Not necessary it should be by deed or written grant. 6 Hill R. 47 ; 1 How. Miss. R. 429, 430 ; 6 Pet. U. S. R. 436–439 ; 10 Ib. 712, 713 ; 2 Ib. 583, 584.

But these principles are all familiar to this court, and we doubt not will be recognized without further multiplication of authorities to support them. And the distinct fact of such acts of dedication in this case is indisputable, being clearly established by the testimony of the Hon. G. G. McCaughn.

2d. But the chief ground of defence on legal principles in the court below was, that however formal the ceremony of dedication of a country road to public use, yet unless laid out under authority of the Board of Police, it had not the legal sanction of a public road, and could not have the court sanction, to keep it open when the owner of the fee, saw proper to shut it up.

No authority was shown for such a principle, beyond that supposed to be deduced from the directory process of the statute in establishing public roads; and we believe none can be found in England; and all the several States of this Union have laws asserting the power and prescribing the manner of laying out public roads, when necessary to invoke public authority to that end. Such roads as public authority establishes, public authority may change or abandon. But how can public authority interfere to close up or change a road, which private enterprise and liberality have dedicated to public use ? Why shall not such gratuities be valid ? And such gratuities (as in this case) may contain the meritorious elements of contract.* In this case Tegarden agreed that if McMasters would dedicate the ground, he would construct the road, of which both parties, together with the public, should enjoy the use. The road was constructed, and it was in full use and enjoyment by the beneficiaries, when McBean bought the land of McMasters, and afterwards when he shut it up. I can imagine no ground for doubt, that such acts make lawful concession of rights, and superinduce to the public, uses and enjoyments, that the courts will protect, against the caprices of the dedicator.

3d. Obstruction of a public road is a nuisance, to restrain or abate which by injunction, is an ancient and well-established power

of equity jurisdiction. 2 Stor. Eq. Jur. § 921–924; Eden on Inj. p. 260 to 267; 1 How. Miss. R. 426, et seq. So too of private nuisances. 2 Stor. Eq. Jur. § 925–926. Eden on Inj. 268; 2 John. Ch. R. 162, 272; 3 Ib. 282.

Obstruction of a public road is a public nuisance. 2 Stor. Eq. Jur. § 923; Eden on Inj. 265; 2 Myln. & Craig, 129, 130; 10 Mass. R. 70; 2 Ib. 143; and cases indefinitely.

4th. It is well established also that a private citizen, specially injured by a public nuisance, may have this redress by injunction for himself, and *pro bono publico.* Eden on Inj. 267–268; 2 Stor. Eq. Jur. § 924 and 924 a. All these previous propositions are clear, and sustained by numerous authorities.

5th. But there are many cases in the books where the chancellor will send an issue to the court of law, to try the right, before perpetual injunction will be granted. This practice rests wholly upon the question, whether the right is or is not sufficiently shown before the chancellor. It is never done when the purchase exists by legislative grant, or otherwise established by public authority.

The cases wherein' such issues are directed, usually arise from claims of private easement, or rights in common, or ancient and prescriptive rights; all cases of private nuisances. But even of these, if grant be shown, no issue is necessary. But our case rests upon no uncertainty as to the fact of dedication, and as to the public use. Whether these obstructions are a public nuisance or not, are before the court, as if on demurrer. Not the facts, but the legal conclusions we deduce from those facts, are resisted, and constitute this defence. There is no doubt of the facts. The facts which we claim as acts of dedication, and the fact of open and notorious public use, are indisputable. Hence we conclude there is no pretence for a trial at law.

Of all that is said and shown in the records of the defendant's offer to give another right of way farther south, and of the serious injury to the profitable, or most profitable enjoyment of his mill property, if compelled to open this road again, we have only this to say: had he meant this offer fairly, he would have opened another way before closing this up. And his wilful act of obstruction, in this case, gives no warrant of better faith, justifying complainant in a further expenditure of money on a new road. As to the injury

to be incurred in reopening this road, whatever it be, it has been wilfully, and voluntarily, and in bad faith, invoked upon himself.

*Fulton Anderson* for the appellees.

In this case, it is doubtful from the bill whether the complainant bases his right to relief upon the ground that the road is private, or public, or both.

1. It is not a private right of way, because that, being an incorporeal hereditament, is clearly within the Statute of Frauds and Perjuries. A private right of way can only be established by grant or prescription, which presumes a grant, or by necessary implication, as where a vendor sells land which is entirely surrounded by other land belonging to him. To enable a party to claim by prescription, there must be an adverse continued use for twenty years. See *Hall* v. *Crosby*, 2 Pick. 466; *Atkins* v. *Bardman*, 2 Metcalf, 457; *Commonwealth* v. *Low*, 3 Pick. 408; 3 McCord, 131; 2 Ib. 445; *Collom* v. *Hooker*, 1 Rawle, 108; 2 Pick. 57; 2 Hill (S. C.) 388, 641; 2 Wharton, 427; 3 Rawle, 492.

2. It is equally clear that it was not a public road. The Act of 1833, Hutch. Dig., p. 252, § 25, declares that all roads now laid out, and opened according to the provisions of this Act, shall be deemed public. "No person or town can alter or change any public road, except by order of the county police." Ib. 253, § 35. The Act of 1839, Hutch. Dig., p. 258, provided for a new mode of laying out roads; but did not repeal the 25th section of the Act of 1833. These acts show clearly that this was not a public road, and would seem to be conclusive of the controversy; but it is to be insisted that there was dedication of the road as a public highway. The authorities which sustain the dedication of highways to the public have reference to streets and commons in towns and cities, and not to the establishment of roads.

In the case of *Gregg* v. *The State*, 2 Hill's R. (S. C.) 388, it was held, that the liability of the public to keep, or not to keep, a road in repair, furnishes a safe and certain rule to determine whether it is a public or private road, and that the only exception is when the public have a right of way by prescription. The same

doctrine was held in *Smith* v. *Kinard*, 3 Hill's R. (S. C.) 641; and it was also held in that case that the public authorities have entire control over public roads, and may establish or discontinue them at pleasure; and that it belongs to them, in the first instance, to determine which are, and which are not public roads, and that all not recognized by them as public, cannot be so regarded. A system prevails in this State similar to that in South Carolina, and the same doctrine ought to be recognized here. See, also, Hawk. Pl. Crown, Book I, ch. 71, § 1; 1 Black. Com. 376; 3 Chit. Crim. Law, 563; 4 Bac. Abr. tit. Highways. •

Mr. Anderson reviewed the cases in 6 Peters R., 9 Cranch, and 12 Wheat., relied on by appellants, and contended that they were inapplicable, as they were all contests in reference to the dedication of urban easements. So, also were the cases of *Jarvis* v. *Dean,* 3 Bingh. 447, and *Vick* v. *Mayor, &c,, of Vicksburg,* 1 How. Miss. 379.

HANDY, J., delivered the opinion of the court.

This was a bill filed by the appellant in the Southern District Chancery Court, for the purpose of removing obstructions placed by the defendants upon a public road, and preventing its free passage and use by the appellant and the public.

The ground on which the road is claimed to be a public one is, briefly, that the land over which it passed had formerly been the property of one McMasters, and that the appellant had purchased from him land, on which he established a ferry, and in connection with it, in the latter part of the year 1848, or the first of the year 1849, built a road, at his own expense, across the land of McMasters, the road and ferry being intended to be free and public, and as such, were dedicated by the proprietors of the adjacent lands, to the public use; that McMasters dedicated so much of his land as was appropriated to the road to the public use, and the public have since had the open use of it as a public road, until it was obstructed by the defendants, who purchased from McMasters the land over which it passed, and who have claimed and exercised the right of appropriating it to their own use, and have accordingly obstructed it.

The road was not adopted by the Board of Police of the county, nor was any jurisdiction exercised over it by that tribunal, and the

Tegarden *v.* McBean & Kibbee.

only ground upon which it is claimed as a public road, is the consent of McMasters, that it should be used as such.

The only question which we think it necessary to consider in this case, is whether the permission of the proprietor of land, that a part of his land may be appropriated as a public road, and the use of it as such by the public, for several years, but not for a sufficient length of time to create a title by prescription, and without any adoption of it by the Board of County Police, as a public road, or jurisdiction exercised over it by that Board, constitutes such a dedication as will vest the absolute right to it in the public, and divest all right of the proprietor.

This question is materially affected by the provisions of our statutes, in relation to public roads.

These statutes declare, in substance, that the roads laid out and established by the authority of the Board of Police, shall be deemed public roads, making provisions for keeping them in repair, prescribing penalties for neglecting to work them, and for obstructing them, and prohibiting their being turned or altered, except by the authority of the Board of Police. Hutch. 252, et seq. By the provision of the Constitution, that tribunal is clothed with " full jurisdiction over roads, highways, and ferries." And these provisions of the statute, were doubtless intended to embrace all public roads in the county, not specially exempted from the power of the Board of Police, and which were necessary for the public convenience. They amount to a legislative declaration of what shall be public roads, and exclude all others. The policy established by these laws is, that the Board of Police shall be charged with the duty of having all public roads kept in repair; and to that end, ample provisions are made for the enforcement of that duty. But in order to do this, the road must be established or adopted by that tribunal; otherwise, there is no compulsory power to have it kept in repair. And in this consists the main difference, between public and private roads, under our laws. That the former are under the compulsory power of the Board of Police as to their management, direction, and repair, to be enforced by penalties prescribed by law; and the latter are under no such authority, being subject only to the right which the original proprietor of the land, may have to resume his ownership for breach of duty, on the part of those for

whose benefit the grant was made, or the use permitted. It is to be presumed that, if a road is necessary for the public convenience to be established as a public one, the Board of Police will perform their duty, and take the proper steps to constitute it a public road, under the sanctions of the law; and if there be no such declaration by that body, the road, though open to public use, could be considered in law but a private road.

In the present case, the road has never been adopted or sanctioned by the Board of Police, as necessary for the public good. No overseer has been appointed to attend to it, nor hands assigned to work upon it, as is required to be done in all public roads. It has never come under the jurisdiction of the tribunal intrusted by the Constitution with the care of all public roads. There is, consequently, no obligation which can be enforced against any one, to keep it in repair as a public work, a consideration which has been held, and we think justly, to be a correct test, of whether a road is public or private, and to fix its character as a private road. *Smith* v. *Kinard*, 2 Hill (S. C.), 642; *State* v. *Grigg*, Ib. 388. The persons interested in and benefited by it, might at any time abandon it, and suffer it to revert to the proprietor. If it should be changed or obstructed by any one, such acts could not be brought within the penalties of the statute, and punished under them.

Thus, the benefits intended to be secured to the public by public roads, are not secured, because the road is not under the sanction of the tribunal appointed by law to protect the public interest, and to provide for the public necessities in such matters. If any invasion of the right occurs, what is the remedy? Not that which is prescribed by law for public wrongs in such cases, but the individual aggrieved has to resort to his common law remedy; and this is aptly illustrated by the filing of this bill.

These considerations plainly show, that though such a road may be a matter of convenience to a neighborhood, it is in law one of private interest and depending upon private right, and not a public road within the policy of our laws.

There may be cases of dedications of streets in towns or cities, which might not come within the policy of our laws in relation to public highways; and there may possibly be cases, where a neighborhood may be entitled, as against the original proprietor of the

land, to the use of a road as an easement, by prescription. But these cases depend upon different principles from the one under consideration, the former not being affected by our road laws, and the latter being local rights, acquired by the community by long possession and use. And in this case, the use and enjoyment have not been for a sufficient length of time to constitute a title by prescription, either to the appellant or in behalf of the community.

As the basis of the appellant's bill is, that the road was dedicated as a public road, we think that that claim is not sustained, and that the bill was properly dismissed.

· Let the decree be affirmed.