# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

FOURTH DISTRICT—AUGUST TERM, 1883.

## CHARLES CHURCHILL ET AL.

v.

## LILLIE FEWKES by, etc.

1. PUBLIC OFFICER ACTING JUDICIALLY, WHEN LIABLE.—A public officer when acting in good faith is never to be held liable for an erroneous judgment in a matter, in which he, by law, acts judicially. It is not enough to aver that the action of such an officer was erroneous, but it must be averred and proved that such action was taken in bad faith, either wantonly, willfully or maliciously.

2. SCHOOL DIRECTORS—SUSPENSION UNDER RULES.—Plaintiff in error, directors of a school, in making rules for the government of a school, adopted one requiring pupils who were absent more than six half days to bring a written excuse from their parents for absence; and upon failure to bring such written excuse, they should be suspended or expelled. These rules were given to the teachers and distributed to the pupils. For a failure to comply with this rule, defendant in error, after several personal requests to furnish such excuse, and a letter to her parents, was expelled. Defendant in error brings this suit for damages against the directors and teachers for such action. The action of the directors and teachers wholly precludes the idea of malice or willfulness. *Held*, that the action will not lie.

ERROR to the Circuit Court of Edwards county; the Hon. C. S. CONGER, Judge, presiding. Opinion filed October 10, 1883.

(520)

Mr. J. M. CAMPBELL and Mr, H. J. STRAWN, for plaintiffs in error.

Mr. W. F. FOSTER, for defendant in error; that all such rules and regulations must be reasonable and calculated to promote the object of the law, cited Rulison v. Post, 79 Ill. 567.

In this case, plaintiff is not required to prove personal hatred or ill will. It is enough to know defendants acted rashly, wickedly and wantonly: Love v. Moore, 45 Ill. 12; Farwell v. Warren, 51 Ill. 467.

CASEY, J.   This was an action on the case begun in the Edwards Circuit Court by appellee against appellants and one George Bower. Upon the trial of the cause before the court and a jury appellant was found guilty as charged in the declaration and plaintiff's damages were assessed at the sum of three dollars.   The other defendant, George Bower, was found to be not guilty by the jury and a verdict so entered as to him The bill of exceptions shows that appellant Charles Churchill and the said George Bower were two of the directors of schools in school district number one, township two, south range ten, east of the third principal meridian in Edwards Co. Ill., and that said school district includes the town of Albion in said county and State, and that appellants Joseph Peasley and J. T. Norton were the principal and assistant teacher of the common school in said district during the winter of 1882 and 1883.

The directors, as they were required by law to do, prepared what they conceived to be necessary rules for the regulation and government of the school. The rules were printed, furnished to the teachers, and the teachers gave to each pupil attending the school a printed copy of the rules.

The second rule is as follows: "Any pupil who shall be absent six half days without a valid excuse will be liable to suspension from study, and no pupil thus suspended shall be restored without permission from the board." Rule number three is as follows: "All pupils will be required to bring written excuses from their parents to teachers for absence, and

such excuse must be satisfactory and reasonable, otherwise it will not be granted."

It further appears from the evidence, that appellee was absent from the school for about two weeks in violation of these rules. When appellee did return to the school, she was asked by her teacher if she had been sick. She replied that she had not been sick and declined to give any reason whatever for her absence.

The teacher then called her attention to the rules and informed her that it would be necessary for her to bring a written excuse from her mother. The teacher then supposed that appellee was the daughter of a widow woman. Neither the mother or father of nappellee would give her a written excuse showing why she had been absent from school, although it sufficiently appears from the evidence that she was absent from school with their knowledge and consent. After several days, the principal of the school and the assistant teacher each wrote letters couched in polite terms to the mother of appellee, calling her attention to the rules of the school as prepared and adopted by the board of directors, and their duty in the premises, and respectively asking that she would furnish her daughter with a reasonable excuse for her absence from school. No reply was made to these letters, and, after the lapse of some four or five days, no excuse having been received from either of the parents of appellee, she was suspended from further recitations. Whereupon she brought this suit against the two directors and teachers to recover damages. There are two counts in the declaration. In the first count it is avowed that the defendants willfully and unjustly, without any cause whatever, suspended and expelled the plaintiff from school, etc.

The directors were acting as public officers, and there is nothing in the record tending to show any personal ill-will or malice on their part or on the part of the teachers toward the plaintiff.

It seems, so far as the record shows, to be an undisputed fact that both the directors and the teachers entertained none but kind feelings toward the plaintiff, and sought in the kindest possible manner to have her comply with the rules of

school as other pupils did. And it is difficult to see why she did not do so. Unless the action of the directors and the teachers was willful or malicious, it is difficult to see how this action can be maintained against them.

The Supreme Court of this State have more than once passed on this question, and have pursued the line of decisions adopted in other States of the Union as well as in England in like cases. Sec. 48, chapter 122, Cothran's Statute of 1881, provides, among other things, as to the duties of directors, that they shall adopt and enforce all necessary rules and regulations for the management of schools, and shall visit and inspect the same from time to time as the good of the school shall require. They shall appoint all teachers, fix the amount of their salaries, and may dismiss them for incompetency, cruelty, neglect, immorality or other sufficient cause.

    *       *       *       *       *       *       *

They may suspend or expel pupils who may be guilty of gross disobedience or misconduct, and no action shall lie against them for such expulsion or suspension.

In commenting on this question the Supreme Court say:

"In the performance of the duties imposed by law upon school directors, they must exercise judgment and discretion. What rules and regulations will best promote the interests of the school under their immediate control, and what branches shall be taught and what text books shall be used, are matters left to the determination of the directors and must be settled from the best lights they can obtain from any source, keeping always in view the good of the school. Good order can only be maintained by enforcing discipline, and that power is largely committed to the directors. They have the power of suspension or expulsion, and they may exercise that power as a means of discipline for the causes mentioned in the statute. That implies declaration and decision on the part of the directors or, as it is sometimes expressed, they act judicially in a matter involving discretion in relation to the duties of their office. A mere mistake in judgment, either as to their (the directors) duties under the law, or as to facts submitted to them, ought not to subject such officers to an action.

They may judge wrongly, and so may a court or other tribunal; but the party complaining can have no action when such officers act in good faith and in the line of what they think is honestly their duty. Any other rule might work very great hardships to honest men who, with the best of motives, have fairly and faithfully endeavored to perform the duties of these inferior offices. They are considered inferior offices, yet they are of the utmost importance to the public.

"No considerable emoluments are attached to them and the duties, often arduous and of an unthankful character, are usually performed by persons sincerely and honestly desiring to do good for their neighbors and the public without any hope or expectation of personal gain. In such a state of case it would be a very harsh rule that would subject such officers to an action for damages for every mistake they may make in the honest and faithful discharge of their official duties as they understand them. It is not enough to aver that the action of such officers was erroneous, but it must be averred and proved that such action was taken in bad faith, either wantonly, willfully or maliciously. If in the discharge of their official duties such officers simply err, it is what other tribunals invested with discretionary power are liable to do." McCormick v. Burt et al. 95 Ill. 264.

In the case of Harman v. Tappendum et al. 1 East (new edition), page 271, Lord Kenyon, C. J., said, in substance, that it was held that an action does not lie against individuals for acts erroneously done in an official capacity from which detriment happens to the plaintiff, at least not without proof of malice.

In the case of Drewer v. Coveton, referred to in a note to the last case, the judge said: "This is the nature of it, an action for misbehavior by a public officer in his duty. Now, I think it can not be called a misbehavior unless maliciously and willfuly done, and that the action will not lie for a mistake in law. The misbehavior must be willful, and by willful I understand contrary to a man's own convictions." To the same effect is Cullen v. Morris, 2 Starkie, 577.

Churchill v. Fewkes.

Reference to many other English authorities sustaining these views might be made if it was deemed necessary.

The case of Donahue v. Richards, reported in 38 of Maine Reports, 292, is very similar to the one now under consideration. In that case the plaintiff, a girl fifteen years of age, was expelled from the school by the trustees of schools because she refused to read the Protestant version of King James' revision of the English Bible. One of the rules of school made by the trustees of schools required this version of the Bible to be read. She declined to read this version of the Bible, because of conscientious scruples but was willing in lieu thereof to read the Douay version of Holy Writ. The trustees did not accept the proposition and she was expelled from school, and then she brought an action on the case against the trustees to recover damages because of said expulsion. The Supreme Court in that case say, in substance, if in the discharge of their duty in good faith and integrity they (the trustees) err, it is only what is incident to all earthly tribunals. To hold them legally responsible in such a case, would be to punish them for the honest convictions of the understanding in the decision of a matter submitted to them and upon which, having assumed jurisdiction, they could not rightfully withhold a decision.

The general principle is established by an almost uniform course of decisions, that a public officer, when acting in good faith, is never to be held liable for an erroneous judgment in a matter submitted to his determination.

All he undertakes to do, is to discharge his official duty to the best of his ability and with integrity; that he may never err in his judgments, or that he may never decide differently from what some other persons may think would be just, is no part of his official undertaking.

In Stephenson v. Hall, 14 Barbour (N. Y.), 222, it is substantially said that the trustees have the power and it is their duty to dismiss or exclude a pupil from the school when in their judgment it is necessary for the good order and proper government of the school to do so. They had no personal interest to gratify or benefit to secure. They were acting for the public without salary or reward. They acted as they hon-

estly believed, judiciously, in the matter of discretion pertaining to the duties of their office. If they erred in judgment in such case they ought not to be held to an action. The defendants, therefore, however much they may have misjudged their duty, are not liable in damages if they acted honestly and in good faith. Dinsman v. Wilkes, 7 How. 89.

In Jenkins v. Waldron, 11 Johnson (N. Y.), 113, it is held that an action will not lie against the inspectors of an election for refusing the vote of a person legally qualified to vote without proving malice express or implied. Officers required by law to exercise their judgment are not answerable for mistakes in law or mere errors of judgment unless fraud or malice in some manner is shown. Cunningham v. Bucklen, 8 Cowen (N. Y.), 276; Butler v. Kent et al., 19 Johnson, 223.

In case of Griffin v. Resing et al., 11 Metcalf (Mass.), 339, it was held that an action can not be maintained against assessors by an individual who is liable to taxation for their omission to tax him, whereby he loses his right to vote at an election, unless it be shown affirmatively, that they omitted to tax him willfully, purposely, and with a design to deprive him of his vote, or unless they had actual knowledge of his liability to taxation so plain and obvious that a sinister purpose and willful omission to tax him in pursuance of such purpose may be a reasonable inference by the jury. Thompkins v. Sands, 8 Wendell, 462; Seaman v. Patten, 2 Caines, 312; Ingraham v. Doggett, 5 Pick. 451.

It does not seem necessary to multiply authorities on this subject. If appellants were acting in good faith, however much they may have been mistaken as to their power under the law, this action can not be maintained against them, and as I have said it is very clear that the directors were acting in good faith in making the rule in question. They could have had but one object and that was that the school should be conducted in such a way as would be most beneficial to the people of the district. The rule in question is not a hard or harsh one. It does not of itself indicate any sinister or malevolent purpose or wicked force on the part of the directors. It does not trench upon the rights or dignity of any one. We

instantly and properly repel any encroachment upon our rights as citizens.   We have a proper pride and ambition in maintaining those rights under any and all circumstances. But I am utterly unable to understand how this simple rule or regulation requiring the pupil in certain cases to bring a written excuse from its parents to the teacher is an attack upon or an abridgment of any of our inalienable rights as citizens of this free country.

It is a simple regulation existing, I doubt not, in many of the schools of the country, that of itself is not wicked, willful or malicious, and as I have before stated, the action of the directors as well as the teachers in the premises absolutely precludes the idea of willfulness or malice on their part.

Objection is made to the instructions given by the court to the jury on the part of appellee, but in the view we have taken of this cause it is not necessary that the objections should be considered.

For the foregoing reasons we hold that appellee has failed to show a cause of action against appellants and the judgment of the circuit court is reversed.

Judgment reversed.