### Amos Page *v.* the Town of Weathersfield.

Towns are liable only for injuries accruing from the insufficiency or want of repairs of their public roads.

No action can be maintained against them for an injury happening on a road or way opened by individuals upon their own land, for their private use, although it has been travelled for a great number of years, if no act of the owners and the selectmen of the town has ever been done, recognizing it as a public road.

THIS was an action on the case for the insufficiency of a highway, whereby the plaintiff was injured in the loss of his horse.

Plea, not guilty, and trial by jury.

On the trial in the county court the plaintiff gave evidence tending to show that, more than twenty years since, a man erected a grist mill on his own land, in Weathersfield, and made and opened a road from the public highway, on his land, to said mill, being about thirteen rods, crossing a hollow; that he sold said land and mill to his son, who occupied it several years, and sold it to his son, after erecting a bridge across said hollow; that this third owner sold to a fourth, two years since, who dug a canal in said hollow, and under said bridge. During all the time, for more than twenty years from the first erection of said mill, the owners of said land and mill had sustained said road, and kept the same open at their own expense, and it was constantly used for the customers passing with their teams and carriages to and from said mill. No highway work had ever been expended by the town on said road, and the owners of said land and mill had always worked out their own highway taxes on other roads. Of these facts there was no controversy nor contradiction.

The plaintiff also gave evidence tending to prove that the plaintiff, in passing with his horse to or from said mill, was, by reason of the insufficiency of said road, so opened to said mill, injured, in this, that thereby his horse was precipitated from said road, near said mill, into said hollow and canal, and killed.

The court charged the jury that the plaintiff, from this testimony, had not shown that the town of Weathersfield was bound to put or keep said road in repair, nor that they were accountable for damages arising from its insufficiency.

The jury returned a verdict for the defendants, and the plaintiff excepted to the charge of the county court.

*T. Hutchinson*, for plaintiff.

The only question, presented in this case, is, whether the *locus in quo* was such a public highway that the defendants were bound to keep it in repair.

1. The exceptions clearly show it to be, in *fact*, an open public highway, without gates or bars, and that it has been so for more than twenty years. Also, that, during all that period, it had been used as a public highway for the travel

WINDSOR,
February,
1841

Page
v.
Weathersfield

of all the citizens going to or from the grist mill. "A highway for all the Kings subjects to pass and repass," is Selwyn's definition of what the parish is bound to repair as a highway.

2. These facts constitute this a legal, public highway. Indeed, fifteen years of such open, public travel makes it a legal highway, without any record of a survey. *State v. Wilkinson*, 2 Vt. R. 480. In that case the court say, " Where the public have had the use and enjoyment of a way for fifteen years, or more, they have acquired a right which cannot be disturbed." Again, " A highway, according to common law, is a place in which all the people have a right to pass. A common street and public highway are the same, and any way which is common to all the people, may be called a highway."

Now every highway must be kept in repair in some way, and it must be the duty of some body to have, and take the care of such repairs. In England, by the general laws, the parish is liable to maintain all highways, new as well as old, within such parish, unless they can clear themselves by showing the burden to rest elsewhere.

To this point we refer to *Rex v. Netherthong*, 2 B. & Ald. 179. *Rex v. Sheffield*, 2 Term R. 106. *Rex v. Inhabitants of Leach*, 27 Com. L. R. 107. In this state, by our statute, the burden of repairs and liability to pay damage accruing for want of repairs, are placed upon the respective towns.

The 6th section of the Statute, p. 429, makes it the duty of the selectmen to divide their town into highway districts. This division should comprise and provide for all the highways in town, which they suffer to remain open for travel.

By Sec. 13, p. 432, towns are made liable for special damage occasioned by means of any insufficiency, or want of repair of any highway, or public bridges in any town in the state.

3. Whether this be a public highway, or not, does not depend upon its length, or its being a thoroughfare, or leading merely to the grist mill, or any other place of resort, but all must depend upon its being open as a public highway, and used and travelled upon, as a public highway for fifteen years or more. This must be the result of the common law authorities. *Rugby Charity v. Merryweather*. 11 East, 375,.

WINDSOR,
*February,*
1841.

Page
*v.*
Weathersfield

in note. *Rex* v. *Lloyd*, 1 Camp. R. 250. *Galatian* v. *Gardner*, 7 Johns. 106. There it was decided, that a road, terminating at defendant's dock, was a public highway. See, also, *Colden* v. *Thurber*, 2 Johns. 424, where it was decided that twelve years use of a road made it a highway for a certain purpose referred to in a statute.

4. We observe that its being a public highway does not at all depend upon the business for, or upon, which the travel is performed; whether to go to mill or to meeting, or to a trading village, or to a dwelling-house. Its constant public use, as a highway, for any purpose whatever, answers the requisitions of the law.

5. We observe that this is in no sense a private way. It was not confined to the use of the owner of the soil, to go to or from his mill, nor was it confined to any number or any class of individuals. Its use has ever been as public for the travel of all persons as that of any road in town, and as much of a public nature. The surrounding population, to an indefinite extent, alike must eat, and must have bread to eat, and their grain must be ground before they can use it.

6. Nor is it of any importance, in this case, who had made or repaired this road, or whether it was ever repaired after it was first made and opened, if the plaintiff's injury occurred through want of repair. Neither the town nor the selectmen can excuse one neglect by proving another; nor can any former repairs, made by any person or persons whatever, excuse the present want of repairs. It was the incumbent duty of the selectmen either to discontinue and shut up this road, or see to its being kept in safe repair. See the reasoning of the court in *Rex* v. *The Parish of Benedict*, 4 B. & Ald. 447, (6 E. C. L. R. 483.) See also the Statute, p. 439 and 440, which gives the selectmen power to discontinue highways, and to lay out pent roads with gates or bars.

It would be a novelty in jurisprudence, if those who are liable, by the general laws, to repair the highways, could shift off their responsibility upon irresponsible individuals, or drive the injured traveller there for redress of his wrongs. With regard to individuals making repairs, or not making them, that is and must be a matter between them and the town merely.

If the plaintiff attempted to fasten this liability upon the

town, by prescription, merely, their having, or not having, repaired the road, would be an important fact to be proved, for or against the prescription. But we present no such case. We rely upon the general liability created by statute. 2 B. & Ald. 179, above cited.

Prescriptions about highways are most generally set up against the owners of the soil, or against some corporation smaller than the parish, to compel them to do what would otherwise, be a burden upon the parish.

In England, the parishes, in Vermont, the towns, are liable to repair the roads, without any prescription. In England, also, all indictments and declarations upon the subject are framed accordingly, assigning no reason for the liability of a parish, but, in other cases, setting up the prescription.

In the case before the court, the public have acquired a right to this highway against the owners of the soil, and the town ought to keep the same in repair.

Without such a system as we contend for, how and when would a traveller know whether he was safe in travelling upon an open road, beaten hard by travel? Or where to look for the damage he might sustain through want of repairs? Must he, before he ventures to travel, go to the record or to the selectmen to learn? That, surely, must be deemed impracticable.

*C. Coolidge*, for defendants.

If it be shown that the defendant was bound by no duty to repair the road in question, the plaintiff cannot recover. There was here no such duty. On the contrary, any one who should attempt to repair the road, though claiming to act under authority of law as highway surveyor, would be a trespasser.

I. There was no laying out according to the statute.

II. There was no dedication.

Although the way was made an open one, this was obviously done to admit customers to the mill; and when an owner of land appropriates an easement upon it for the prosecution of a particular interest or business of his own, and that seen and known by all the world, no presumption of a dedication to public use can arise so long as the specific purpose of the easement is followed, however free the ingress and egress may be.

III. The town has done nothing by way of accepting or recognizing the road as a public highway, has not volunteered to put upon it repairs, nor even permitted the successive owners of the land to expend on it their own taxes, and the case finds expressly that the owners have ever sustained the road at their own expense.

The road, therefore, has no one of the properties of a public highway, save its openness, which we have seen was simply auxiliary to a private interest. The proprietor of the land and mill may lawfully shut up his mill and road whenever he shall please to do so.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—The case before us is a very clear one. If the town is liable in this case, a highway may be established and the town liable to repair the same and subject to an indictment as well as a suit to be brought by individuals, against the consent, and contrary to the will, both of the town and the owners of the land, where the highway is attempted to be established.

Towns are made liable by force of the statute for injuries happening to individuals, and in consequence of the insufficiency or want of repairs of their public roads and bridges. A public road is one laid out by proper authority—as the selectmen of the town, or a committee appointed by the supreme or county court, the evidence of which is the survey, &c., or the record. When this evidence is wanting, a public highway may be proved by other acts showing that the towns have recognized it as such, by doing labor thereon, or authorizing the surveyors to collect and expend the highway tax thereon. But I know of no way in which an individual can lay out a highway for his own benefit and compel the town to adopt it as such.

The selectmen may discontinue certain public highways laid out by them, but they cannot discontinue a way adopted by individuals for their own benefit. A discontinuance of such a private way, entered on the records of the town, would be wholly inoperative, as the individual could still keep it open.

It has been argued, in this case, that the selectmen have power to lay out pent roads, and authorize gates, &c., to be

WINDSOR,   erected thereon.  To give any force to this argument, it
February,   should appear that they had power to compel the erection of
1841.
            gates and bars.
Wheelock
  v.            About the facts in this case, it is said there was no con-
Moultons.   troversy or contradiction.  The owners of the mill opened a
            passage from the highway to their mill, and have used it for
            the benefit of themselves and their customers, have repaired
            it from time to time, and the town have done no highway
            work thereon.  The selectmen could neither discontinue it
            as a passage, nor shut it up, nor control it in any way.  It
            commenced at the highway and terminated at the mill.
            Whenever the owners of the mill have no further use for it,
            they may fence it up without the consent of the selectmen
            or consulting them, and while they want to use it for the
            same purposes as heretofore, the select men cannot interfere
            with their right so to do.  No one of the numerous authori-
            ties read, afford any countenance to the idea that this pas-
            sage was a public highway, which the town were bound to
            repair, or for the insufficiency of which they were liable to
            the suit of an individual injured.

            The judgment of the county court is therefore affirmed.