# FEBRUARY TERM, 1869.

◆◆◆

### HANSON and another vs. TAYLOR.

*Highway by user.*

1. The continuous and uninterrupted use of land as a highway, during the period limited in section 85, chapter 19, R. S. 1858 (§ 80, ch. 16, R. S. 1849), must be presumed (in the absence of proof to the contrary) to have been under claim of right, and creates a prescriptive right in favor of the public.
2. *It seems* that it is not necessary to show that the road was worked, or attached to a road district, or that any other act was done by the town authorities recognizing it as a highway. *State v. Joyce*, 19 Wis. 90, overruled.

DIXON, C. J., dissents.

APPEAL from the Circuit Court for *Dane* County.

Trespass *quare clausum.* Answer, highway. Verdict and judgment for the plaintiffs; and the defendant appealed. The case in this court turned upon the correctness of the instructions given to the jury; and these are sufficiently set forth in the opinion.

*J. D. Gurnee*, with *Geo. B. Smith*, of counsel, for the appellant, contended, among other things, that the *locus in quo* became a highway by virtue of a continued and uninterrupted use for ten years, under section 80, chapter 16, R. S. 1849 (§ 85, ch. 19, R. S. 1858), citing *Miller v. Garlock*, 8 Barb.

155; *Hammond v. Zehner*, 23 id. 473; *Colledge v. Horn*, 11 E. C. L. 59; 21 N. Y. 118; 3 Kent's Comm. 442.

*Hopkins & Foote*, for the respondents, relied upon *Gardiner v. Tisdale*, 2 Wis. 194, and *State v. Joyce*, 19 id. 91, and the cases there cited by the appellant's counsel.

Cole, J.   I am of the opinion that there must be a new trial in this case, on account of the error of the court below in refusing to give the first and second instructions asked by the defendant.   These instructions read as follows :

"1. If the jury should find from the evidence, that the premises had been used continuously and uninterruptedly as a public highway for twenty years, such use is conclusive in favor of the public that it is a highway, and the plaintiffs cannot recover.

"2. If the jury should find from the evidence, that the premises had been continuously used as a highway for the period of twenty years; and that the defendant or his grantor had assented to or acquiesced in the use of the premises for a highway, or declared his assent to such use, then it is a legal highway, and the plaintiffs cannot recover."

It appears to me that there was no error in these instructions of which the plaintiffs could complain, and that they should have been given to the jury.   For it abundantly appeared from the testimony of several witnesses (if the jury credited their statements), that the *locus in quo* had been used as a public highway continuously and uninterruptedly for more than twenty years — a use or enjoyment on the part of the public for a sufficiently long period to create a prescriptive right under the statute.   The provision of the statute alluded to, is the last clause of section 80, chapter 16, R. S. 1849 (same provision in section 85, chapter 19, R. S. 1858), and is in the following words: "All public highways now in use, heretofore laid out and established pursuant to law, and all

Hanson et al. vs. Taylor.

roads not recorded which have been used as public highways twenty years or more, and all roads not recorded which shall hereafter be used ten years or more, shall be deemed public highways."

Now, among other objections taken to these instructions by the counsel of the plaintiffs, it is insisted, that the instructions were erroneous because the statute provides that the limitation shall be ten years, and not twenty, and that hence they did not, in the language in which they were drawn, embrace correct propositions of law. It is very true that the highway in question had not been used twenty years or more when this statute was enacted, in 1849, and that it therefore more properly came within the less period of limitation. But is it not perfectly obvious that if the jury had found from the evidence an uninterrupted and continual user of the premises for a highway for a period of *twenty* years, they must also have found a user for the period of *ten* years? The greater included the less. So this objection, as it seems to me, is not well taken.

I may likewise observe, in passing, that there is a verbal inaccuracy in the second instruction in using the word "defendant" for "plaintiff;" but the context shows so very clearly the idea intended to be conveyed by the instruction, that no one could have possibly been misled by this mere verbal inaccuracy. The plain and obvious meaning of the instruction is, that where premises have been continuously and uninterruptedly used by the public as a highway for the period of twenty years, and the owner has assented to or acquiesced in the exercise of this right so to use his land, there the right of the public as against the owner is complete, and the road is to be deemed a legal highway. It may perhaps admit of great doubt, whether under our statute it is essential that it should appear that the owner assented to or acquiesced in the use of the premises as a highway, or whether, if there has been the use for the requisite period unexplained, it must not be presumed to be under a

claim of right, and be sufficient to establish a title by prescrip-
tion, and authorize the presumption of a grant, unless contra-
dicted or explained by the owner. In the absence of all
evidence tending to show that such long continued use of the
way is permissive, or may be referred to a license or special
indulgence, does not the statute declare that it shall be deemed
a public highway from the fact that it has been used as such
for the period of limitation? I confess, after a careful examina-
tion of the statute, such seems to me to be its meaning. I
should unhesitatingly place this construction upon the statute,
were it not for the decision of this court in *State of Wisconsin
v. Joyce*, 19 Wis. 91, where a different view is expressed. And
although I am very reluctant to question the soundness of that
decision, yet it seems to me that the broad doctrine laid down
in the opinion must be qualified. Mr. Justice Downer there
uses the following language: "The question is, whether a
mere traveling over such a road or track for ten years is such a
*user* as is required by section 85, chapter 19, R. S., to make it
a public highway. If it is, then it would follow that the town
through which such a road runs might be liable for damages
occasioned by the road being out of repair, when neither the
town nor any of its officers had done any act accepting or
recognizing it as a highway. Independent of the statute, there
must be twenty years' adverse user before it would become a
highway; and to make the user adverse, there must be some
acts done showing a claim of right, such as working the road,
repairing it, attaching it to a road district, or some act recog-
nizing it by the proper authorities as a highway. Not till the
doing of some such act or acts, or the assertion of such claim,
would the twenty years begin to run. The presumption up to
that time is, that the public user is permissive and not adverse."

The circuit judge charged the jury in entire conformity to
this exposition of the statute. He instructed the jury, that, to
constitute a highway by prescription, there must be something

more than the mere traveling over or use of the track for the period of ten years or more; that there must be an adverse user for that period, and some act done upon the part of the proper authorities showing a claim of right, such as working the road, repairing it, attaching it to some road district, or some such act recognizing it as a highway, or claiming it for the purpose of travel against the wishes of the owner; and that not until the doing of some such act or acts, or the assertion of such a claim, does the ten years required by the statute to make a highway of an unrecorded road begin to run.

Now, it seems to me that the insuperable difficulty with this view of the statute is, that it incorporates into the law, by judicial construction, material provisions which the legislature did not think fit to adopt. The legislature certainly have not said in this enactment, that all unrecorded roads which shall be used ten years or more *after the proper public authorities have done some act in respect to them, showing a claim of right over them, such as working the roads, repairing them, attaching them to some road district, or some other act recognizing them as highways,* "shall be deemed public highways." But the legislature has simply said: "roads not recorded which shall hereafter be used ten years or more, shall be deemed public highways." It seems to me to be taking an unwarrantable liberty with this language to say, that it means that roads not recorded which shall be used ten years or more *after* the public authorities have done some acts showing a claim of right over them, as by working or repairing them, or by attaching them to some road district, or by some other act shall recognize them as highways, shall be deemed highways. This is surely adding to the statute most material and important qualifications. Is it the province of the courts, whose duty it is merely to interpret the statute, thus to amend and restrict it? Can they say, in addition to a user of the highway by the public for ten years, there must be some other act or fact or declara-

tion on the part of the public authorities for the same period, as a basis of the prescription? To adhere to the broad doctrine laid down in the *State v. Joyce*, results inevitably in an important amendment to the statute.

To avoid all misapprehension, it is necessary to add a word in respect to the nature and character of the use or enjoyment which will give the prescriptive right. And in the first place, it is very obvious that the user mentioned in the statute was not intended to be a matter of permission. In the language of Chief Justice BLACK, in *Garrett v. Jackson*, 20 Pa. St. 331–335, " a passage by one man over the land of another with the special permission of the owner on every occasion of its use, will not raise the presumption of a grant, no matter how it may occur, nor how long continued. So a license to use the road for a certain defined period, and the enjoyment of it under such license, will give no right after the expiration of the time. But where one uses an easement whenever he sees fit, without asking leave, and without objection, it is adverse, and an uninterrupted adverse enjoyment for twenty-one years is a title which cannot be afterward disputed. Such enjoyment, without evidence to explain how it began, is presumed to have been in pursuance of a full and unqualified grant. The owner of the land has the burden of proving that the use of the easement was under some license, indulgence, or *special* contract, inconsistent with a claim of right by the other party." These remarks of the learned judge were made in reference to a private way, but still they apply with far greater force to the user of a public highway under the statute. For where the public pass more or less frequently for the period of ten years over a highway, not in one place to-day and another to-morrow, but uniformly over essentially the same track, as often as they have occasion to pass in that course or direction, and where the amount of travel—regard being had to the situation of the country, and other surrounding circumstances—shows that

the public exercise the right of using the land as and for a highway, there the user, unexplained, may well be considered adverse, and such user authorizes the presumption of a grant. Hence, after the expiration of the statutory period, it would seem but just to throw the burden upon the owner of showing that the use was merely permissive, and not as a matter of right. Such seems to me to be the natural and proper construction of the statute. In New York they have a similar statute, and, as I understand the decisions, the courts there have taken a like view of it, holding that the uninterrupted use of land as a public highway for twenty years alone constitutes it such a highway. *Devenpeck v. Lambert*, 44 Barb. 596; *Wiggins v. Tallmadge*, 11 id. 457. And upon an analogous provision, see *Galatian v. Gardner*, 7 Johns. 106; *The People v. Lawson*, 17 id. 277. In the cases of *Lemon v. Hayden*, 13 Wis. 159, and *Wyman v. The State*, id. 663, this court held that by the principles of the common law a continued and uninterrupted use by the public of land as a highway for twenty years, with the consent of the owner, was conclusive in favor of the public that it is a highway. To substantially the same effect are the cases of *Onstott v. Murray*, 22 Iowa, 457; *Smith v. The State*, 3 Zab. 130; *Day v. Allender*, 22 Md. 512, and *Regina v. Petrie*, 30 Eng. L. and Eq. 207.

In some of the states it has been held, that a bare use alone of land as a highway, over waste and uninclosed land, for the local period of limitation, will not give a prescriptive right, or warrant the presumption of a grant. *Commonwealth v. Kelly*, 8 Grattan, 632; *Stacey v. Miller*, 14 Missouri, 479; *Hogg v. Gill*, 1 McMullan, 329; *Hutto v. Tindall*, 6 Richardson, 396; *contra, Worrall v. Rhoads*, 2 Wharton, 427. I do not find in any of these states, however, a statute like the one which exists here, and which it seems to me must have a controlling influence upon the effect of a continued user of the highway for the requisite period.

Hanson et al. vs. Taylor.

It is said that if the mere traveling over a road or track for ten years is such a user as is required by the statute, then it follows that the town through which such road runs may become liable for damages occasioned by the road being out of repair, when neither the town nor any of its officers had done any thing recognizing it as a public highway. This objection could not very well be taken upon the facts of this case, unless, indeed, it is necessary that there should be ten years' uninterrupted user after the public authorities have worked upon the road, or done some other act recognizing it. For it appears that in 1858 work was done upon the road under the direction of the road overseer, and also at other times thereafter, while in various ways the town authorities recognized the road as a highway. So that probably the town would be chargeable within the doctrine of those cases which hold that there must be an acceptance of the highway by the public authorities in order to render the town liable for damages occasioned by its being out of repair. It is hardly to be assumed that highways will be used continuously for ten years by all persons when the public convenience and necessity do not require them; but if they should be, and unnecessary burdens are imposed upon towns to keep them in repair, the legislature can make an acceptance by some act of the public authorities requisite to make them highways. As the law now stands, all roads not recorded which shall be used ten years or more shall be deemed highways. This is the express language of the statute, which governs the case.

It follows from these views that the judgment of the circuit court must be reversed, and a new trial ordered.

Dixon, C. J., *dissenting.* The facts in this case are the same as in *State of Wisconsin v. Joyce.* My brethren so recognize them, and so do I. The travel was over uninclosed wild land, where no road had ever been laid out, or recorded, or

worked, or recognized by the officers of the town or other pub-
lic authorities, until a period within ten years from the time
the action was commenced. I think that case was rightly
decided, and should stand as the law of the state. It is directly
and fully sustained by very many most respectable authorities.
*Kelly's Case*, 8 Gratt. 632; *Hogg v. Gill*, 1 McM. 329; *Hutto
v. Tindall*, 6 Rich. 396; *Bowman v. Wycliffe,* 15 B. Mon. 84;
*Watt v. Trapp*, 2 Rich. 136; *Gibson v. Carver*, 3 id. 85; *Har-
ding v. Jasper*, 14 Cal. 642; *Phipps v. State*, 7 Blackf. 512;
*Warren v. Trustees of Jacksonville*, 15 Ill. 236; *State v. Carver*,
5 Strobh. 217; *Irwin v. Dixion*, 9 How. (U. S.) 10; *Golding v.
Williams*, Dudley (S. C.) Law, 92; *Badeau v. Mead*, 14 Barb.
328; *Stacey v. Miller*, 14 Mo. 479; *Tegarden v. McBean &
Kibbee*, 33 Miss. 283; *Smith v. Kinard*, 2 Hill (S. C.) Law,
642; *State v. Gregg*, id. 338; *Oswego v. Oswego Canal Co.*, 6
N. Y. 257; *The State v. Nudd*, 3 Foster, 327; *Folsom v.
Underhill*, 36 Vt. 580; *Onstott v. Murray*, 22 Iowa, 457;
*Clements v. West Troy*, 16 Barb. 251; *Trustees, etc., v. Otis*,
37 id. 50. With these well considered authorities in its favor
(to which others, found in the brief of the counsel for the
appellant in that case, might be added), I must say that I can
see no reason for overruling the decision, even though it should
appear by the decisions in England, and some of the older
states, that a different rule prevails in those countries with
respect to the effect of mere use by the public of open or unin-
closed lands for the purpose of travel. That any different rule
does prevail in those countries in such cases, is perhaps more a
matter of assumption than of positive evidence. The reported
cases do not show it. They do not show that it ever became
necessary for the courts there to distinguish upon such a state
of facts. But assuming that the rule is different in England
and in some of the states, and that it is there held that mere
travel by the public over vacant or common land for a sufficient
length of time will create a highway by user or prescription, it

does not follow that the same rule ought to prevail in this state, or that the application of the same principles by which the rule is there upheld and established would lead to its establishment here. The common law principles underlying the doctrine of highways by user or prescription are the same everywhere, and it is for the correct application of those principles that I shall contend here; and when so applied, it will be my endeavor to show that they result in the establishment of exactly the opposite rule with respect to the effect of mere travel by the public over the wild and uninclosed lands of this state. In other words, I shall endeavor to show that there is no conflict of principle between the authorities I cite and which bear directly upon the question, and the English and other authorities which do not; and that all the authorities, with one or two exceptions, sustain the views which I take.

And this I humbly conceive to be the great mistake of my learned associates, that they apply to this new, and in many parts unsettled state, a doctrine which, though it may be very just and proper in England and some of the older states, is wholly unsuited to our condition and circumstances, and must, as it seems to me, result in great public and private inconvenience and mischief. In England, and those older states where the price of land is high, and particular care is taken to guard against and prevent all trespasses upon it, and where all, or nearly all, the lands of any value are, and for many generations have been, securely inclosed, and actually used and occupied by the owners, it may not be unreasonable to hold, if the owner suffers his land to lie open and be long used by the public for the purpose of travel, and the convenience and accommodation of the public require it to be a highway, that such long user alone constitutes sufficient evidence of a dedication of a right of passage to the public by the owner, and of the acceptance thereof by the public. The instances where owners thus permit their lands to lie open, and to be freely and uninterruptedly

used by the public for a highway, are probably exceedingly rare and exceptional, and when they do occur, they may, according to the circumstances and condition of the country, afford very strong ground for presuming, not only that the owner knew of and assented to such use, and so intended to dedicate, but also that it was the intention of the public authorities to accept the dedication. And under the same circumstances, the unopposed use of a highway by the public, over the land of an individual conusant of the fact, for a period much short of that required to establish a highway by prescription, may raise the presumption of a dedication to the public by the owner, and authorize the finding of such fact by the jury. *Phipps v. State*, and authorities there cited. Title acquired by prescription and title acquired by user, or adverse user, as it is commonly called, mean the very same thing. Prescription is defined to be a mode of acquiring title to an incorporeal hereditament by long and continued usage. Burrill's Law Dic.; Bouvier's Law Dic. The intention to dedicate, *animus dedicandi*, on the part of the owner of the soil, constitutes in every case the very foundation of the right; and there can be no title by prescription or adverse user without it. "It is true," say the court in the case last referred to, "that twenty years' continued, unexplained and adverse user of a private way, or other easement, over or on the land of a person who *acquiesces in the user*, raises a presumption that the right so exercised had its origin in a grant;" but the court held that such user of a public way over uninclosed lands in the state of Indiana was no evidence of such *acquiescence*. "We entertain no doubt," says Chief Justice RICHARDSON, speaking for the whole court, in *Barker v. Clark*, 4 N. H. 383, "that a highway may be proved by long usage. But a way, to become public, must be used in such a manner as to show that the public accommodation requires it to be a highway, *and that it is the intention of the owner of the land*

*to dedicate the way to the public.*" And in *Warren v. Trustees of Jacksonville*, it is correctly said: "A right by prescription cannot be raised against the consent of the owner; but the use may be so long unobjected to, as to authorize the finding of an implied consent, and to raise a presumption of consent and even of grant." These extracts sufficiently illustrate the doctrine, every where admitted, that dedication by the owner of the land is the true and only source of every title in the public to a highway claimed by prescription or adverse user. Angell on Highways, § 131; 42 Maine, 23. Within the period prescribed by law in which title by user or prescription may be acquired, which is commonly twenty years, though in this state ten years, the use of the land by the public may, upon the circumstances of the particular case and in view of the nature and situation of the country, furnish evidence of an intention to dedicate; but after that period has elapsed it becomes conclusive evidence of such intention, or of a dedication which cannot then be recalled, or, as expressed in many of the authorities, of a grant the written evidence of which is presumed to have been lost or destroyed by lapse of time. But into every such case there enters, as the starting point and foundation of the public right, the element of knowledge, on the part of the owner, of the use made by the public of his land, and of his assent thereto, which assent must be either expressed or implied from such clear and unequivocal acts and conduct, or strong circumstances of approbation on his part, as leave no doubt of his intention to dedicate or give the land to public use. And in cases of the kind, where the knowledge and assent of the owner are thus made to appear, and a dedication or grant is inferred, the user is said to be adverse, or a title by prescription is created. But in other cases, where the assent of the owner is not shown, and it is neither shown that he objected to or opposed the public travel over his land, the user is said to be permissive. User without any proof of

Hanson et al. vs. Taylor.

assent or dissent by the owner is permissive, but not adverse. It signifies that while the owner neither authorizes nor sanctions the use, he takes no steps to prohibit or prevent it. He remains passive, and simply permits the use to go on. Now, however it may be in England, and in the old states where the English doctrine has been adopted, with regard to mere travel over uninclosed lands constituting sufficient evidence of an intention on the part of the owner to dedicate, and on the side of the public authorities to accept the land used as a highway, I must insist that the same facts ought not, and in reason and justice cannot, have the same effect in these new states, and especially here in Wisconsin. The condition and circumstances of the country are exactly reversed. Of the lands in the state, by far the larger portion is still uninclosed and unoccupied. It is no more than twenty years ago that nineteen-twentieths of the lands in the now more thickly settled parts of the state were wholly unfenced and unoccupied. And yet, such was the situation of the whole country then and for some years before, and such is that of many parts of it now, and as it will be for a long time to come, with settlements and settlers scattered here and there over it, and with no towns or counties organized, or local authorities in existence, to lay out and establish highways, that people, traveling from one part of the country to another or from one settlement to another, have always been, and must still continue to be, under the necessity of passing over the uninclosed lands of individual proprietors; and this has been and must hereafter be done, not because the route or track pursued by travelers has been or is a highway, or claimed to be such, by dedication or otherwise, but because there is no lawful highway for travelers to pursue. It is, at most, but a right of way or passage by necessity, which is a temporary right, and cannot be made the basis of a permanent one. Unobjected to — and no one ever thought of objecting or bringing an action, and I believe none could be maintained

if brought—it amounts to a mere license on the part of the owners of the land, which they may revoke whenever their interests or convenience may require. The generally smooth and unbroken surface of our territory, consisting in great part of prairies and sparsely wooded timber lands, with nothing to obstruct the course of the traveler, has contributed largely to the ease and facility with which these numerous ways or routes have been formed. Very little or no labor was required anywhere to make them passable and convenient for travel. In some sections of the state the lands of individuals have been and still are threaded with them in all directions, whilst in others, perhaps, they are or may have been less numerous, and the path of the first traveler, or some Indian trail, may have become the only traveled track for years. But in all cases, whether there have been many lines or routes of travel, or only one or two, the universal understanding and practice of our people have been, that no public highway exists until it has been laid out and established by the proper public authority. Every person in the least acquainted with the settlement upon and improvement of lands in this state, and with the growth of our rural population, must know this. It is but within the last two or three years that I myself have observed the obstruction of, and complete exclusion of the traveling public from, one of the ways of very early date, and that within this county of Dane, very nearly the center of the present population of the state, where its capital is located, and in which the lands of the plaintiff in this action are situate. It was a way in which I, in common with all others, had traveled for nearly twenty years, and which, for a period of considerably over thirty years, had been a great thoroughfare between two very important and prominent places in the state. And yet this was and has from time to time been done, until the old familiar way of the first inhabitants has entirely disappeared, and a new and in many places more circuitous

one has been provided, and no one, either public officer or private citizen, has, so far as I know or have reason to believe, ever made the slightest opposition to it. And this is but one among a great number of like cases which have fallen under my own observation, and my observation is the same as that of every one who has lived in the state for the same length of time; and it seems hardly necessary to add here, that cases of the kind have been constantly occurring in every part of the state, from the time of the first settlement in it down to the present moment, and no one has ever thought of disputing the right of the owners of the soil to do so, or ever dreamed that the traveled tracks in question were lawful highways, until my learned brethren arrived at that most alarming conclusion in the present case. The constant and uninterrupted practice of the country has been, so soon as lands were required for actual settlement and cultivation, for the owners to fence and improve them, regardless of these traveled tracks, and then, if highways were needed, for the proper authorities to take the land necessary for that purpose, and to pay for it, as every community wishing to deal fairly and honestly by its individual members is willing to do, and as the constitution and laws of the state require. And such is still the practice, and it is impossible at the present time, in many parts of the state, to go any distance without meeting the accustomed annoyance to the traveler, a fence across the track, and being obliged to make one's way around fields and other obstacles in order to reach the journey's end. I point to these well known facts and circumstances to show the habits and customs of our people, habits and customs which the courts have always taken notice of and always must, in considering questions of this nature, or be led blindfold into the commission of the grossest error and injustice. I point to them as demonstrating beyond the possibility of a doubt, that it is not, and never was, the intention of any owner of wild or vacant lands in this state, in

permitting the public to pass over them for the purposes of travel, to dedicate them to the public as a highway. I point to them as absolutely disproving such intention; and if such intention did not exist, then, according to every decision both English and American, there can be no highway by user or prescription, no matter how long the travel may have been permitted. And this, I think, is the vital error in the conclusion arrived at by my brethren. They ignore entirely these most important distinguishing facts and circumstances with reference to our situation as a people, and attempt to apply here the rules of decision in England and those states where no such facts and circumstances have ever existed, and where the manners, customs and habits of the people are entirely different. They forget that the courts of England and of many of the states have never been required to decide, and never have decided, the question here presented; and they likewise disregard, not only the decisions of the courts of those several states where the question has arisen and has been decided, but the decisions of this court. I say the decisions of this court, because I think the unanimous opinion expressed by this court in *Gardiner v. Tisdale*, 2 Wis. 194, when the same statute existed which exists now with respect to highways by user, must be regarded as equivalent to a decision. The question was carefully and deliberately weighed and considered, and the views expressed undoubtedly received the approbation of every member of the bench. This was a very early judicial exposition of the law upon the question, which cannot now be disregarded without the greatest wrong and oppression. It has become a rule of property between hundreds, and perhaps thousands, of individuals and the public, which has been steadily adhered to from that time to the present moment. The cases of *Lemon v. Hayden*, and *Wyman v. The State*, 13 Wis. 159 and 663, do not infringe it in the least. In the former the assent of the owner to the use was distinctly shown. He aided

in laying out the road originally; and he and those holding under him, including the plaintiff in the action, knew of and acquiesced in the public right claimed, for a period of more than twenty years. And in the latter, there were facts and circumstances beyond the mere use of the land by the public, clearly evincing an intention on the part of the owner to dedicate for the highway. I agree, therefore, with this bench as composed in 1853, and again in 1865. I agree with the court in *Gardiner v. Tisdale*, when it said: "Although length of time, as it relates to *user*, becomes in some cases an important consideration, yet in a country like ours, where roads and highways are being constantly enjoyed over the lands of persons without any authority of law, and by the tacit permission of the owner, but without any act of theirs showing an intention to appropriate or yield their property to public use, we think it would be mischievous to permit user itself to be evidence of dedication. Other facts and circumstances ought to be shown, which might not only evidence an intention to devote the use of the property to the public, but an actual appropriation of it." I agree with the supreme court of Illinois, when, speaking for a country and people situated precisely like our own, it said: "The use and occupation is without any proof of assent or dissent. It was over lands lying uninclosed and in common. While so much land lying in common in this country remains free to public user and travel, until circumstances induce owners to inclose, we can deduce no strength of inference or conclusion from mere travel across it by the public, without objection from the owner. It is neither the temper, disposition, fashion, or habit of the people, or custom of the country, to object to community enjoying such privileges, until owners wish to inclose."

"It has been usual and customary in this state," say the supreme court of Kentucky, "to travel over uninclosed woodland without asking the permission of the owner; and consider-

ing the extent and universality of this custom, it tends strongly, if not conclusively, to repel any presumption that might otherwise arise, in such a case, from long continued use, of the grant of the right of way by the proprietor of the land. The mere use of this road, then [in that case for forty or fifty years] during the period of time that the land through which it passed was uninclosed woodland, cannot be regarded as proving anything detrimental to the rights of the proprietors of the land."

"It is well known," say the general court of Virginia, "to all who have lived in the country, that, until a recent period, owners frequently permitted roads to be opened through their forests and other lands not in cultivation, without the least intention of dedicating these roads to the public. Many roads so opened remained for long periods, and indeed they are not often closed until the owners have occasion to cultivate the land through which they run."

"It cannot with reason, be said, that there ever was any clear and unequivocal assent or acquiescence in the use of the road by the public as its own, on the part of any of the owners. The fact that Johnson knew the road was traveled by the public, the land being uninclosed, waste land, is nothing. He was not bound to fence in his own tract, in order to rebut a presumption of dedication of a small part; nor were Robinson and Woodruff, his successors." Supreme Court of California, *supra.*

"As a presumption of a grant of way by the owner of the land, arises from the exercise of a privilege adverse to his right of property, and from his acquiescence in the exercise of the privilege, the presumption will not be supported, if the use of the way does not infringe on his rights, nor conflict with his enjoyment of his property. A distinction must therefore be observed, between the claim of a way through inclosed and cultivated land, and of a way over uninclosed woodland. In the former case, the mere use is an invasion of property, and a

trespass; and acquiescence or submission to the exercise of a privilege, under circumstances which make it actionable, may justify the inference of a legal right in the person who exercises the privilege. But where the way passes over woodland, those who travel it commit no trespass, at least not until after notice to desist, and it subjects the owner to no loss or inconvenience. To prohibit them would be considered churlish, and would be ineffectual unless a constant watch was kept to prevent them. And to require the owner to secure his land against an adverse claim, by a use not actionable, of a way over it, would, to that extent, exclude his property from the protection of the law." Court of Appeals of South Carolina, in *Hutto v. Tindall, supra.*

"To give a right of way through woodland, there must be some notorious assertion of right, by an act done which would be equal to a *pedis possessio;* such as cutting out a road, or working upon it habitually." The same court, in *Watt v. Trapp, supra.*

"The foundation on which the doctrine of dedication by user rests, is, that the owner of the land has for a considerable length of time acquiesced in such user. Any thing which shows that there was no acquiescence by him destroys the presumption. We do not think that this doctrine of dedication inferred from user is at all applicable to the extensive uncultivated domain of the United States." Supreme Court of Indiana, *supra.*

"We do not doubt that a person may dedicate his land as a public highway without a deed, and that a user of twenty years is not in all cases essential to establish such dedication. But this is in cases where it is obviously the intention of the proprietor to make such dedication. The bare fact that a farmer leaves a lane through his farm for his own convenience, and permits the public to use it as a highway, does not authorize any inference that it is his intention to dedicate such road

to the public. On the contrary, in most instances in our country, no such idea is entertained." Supreme Court of Missouri, in *Stacey v. Miller.*

"We are of the opinion," say the court of Iowa, in the case above referred to, "that long use and *long acquiescence in such use by the owner of the land*, are, in and of themselves, evidence of a dedication. How much weight they are entitled to, *depends upon the situation of the land, the nature of the right claimed and exercised by the public*, the knowledge of the owner, etc. * * *A land owner is not to be concluded, who, without knowing that a claim of right is being asserted on the part of the public*, allows his neighbors to pass over his land for their mere accommodation, to obtain fuel or for other like purposes. * * In cases of implied or presumed acquiescence or consent on the part of the owner, very much depends upon the location of the road, the amount of travel, *the nature of the use by the public, the right asserted by the public, the knowledge of the owner*, and like circumstances." This is an authority cited by my brethren to sustain their conclusion, that the mere unopposed passage by the public over the land of an individual for the requisite period of time, no matter what the other circumstances may be, will constitute a highway by user or prescription; but I fail to see that it does so.

"But the dedication must also be *under such circumstances as to indicate an abandonment of the use exclusively to the community by the owner of the soil.*

"Nor must the acts and words be equivocal or ambiguous on that subject.

"In short, the idea of a dedication to the public of a use of land for a public road, must rest on the clear assent of the owner, in some way, to such dedication. This assent may be proved by a deed or unsealed writing expressing such assent, or, as no fee in the land, but only an easement generally is given, it may be by parol or *by acts inconsistent and irrecon-*

*cilable with any construction except such consent.*" Supreme Court U. S., in *Irwin v. Dixion, supra.* In this case, the premises in dispute had been constantly and uninterruptedly used by the public as a highway for a period of about fifty years, when the owner inclosed them; and the court held he had a lawful right to do so, because no intention to dedicate was shown, and the user was not adverse.

Now I fully agree with the views expressed in these various opinions, and others to which I have referred; and I have quoted very liberally from them on account of the great importance of the subject to the people of this state, and because the causes in which they were pronounced are the only ones I have been able to find which involved the direct questions here considered. In saying the only ones, I do not of course mean to overlook the isolated case of *Worrall v. Rhoads,* 2 Whart. 427. That was a case of private way. The opinion is a very unsatisfactory one, and, to the credit of the bar and bench of the state, seems not to have been cited on subsequent occasions. The court quote from the *Doctor and Student* to prove that a right of way by user may be acquired in the forests of Pennsylvania. Among the reasons assigned for holding the owner of the land bound by the use, and presuming that he had granted the right of way, the principal and most remarkable one was that he had been *guilty of a great negligence* in not having inclosed the land so as to keep strangers off of it, or in permitting them to go upon it. The court say: "And beside, seeing it can work no prejudice to any one, excepting to him who has been guilty of great negligence, to say the least of it, public policy and convenience require that this presumption should be made, in order to promote the public peace, and quiet men in their possession." I do not know but reasons like these will convince the people of these north-western states, the great body of farmers and other proprietors of open and uncultivated lands, that their lands

ought to be confiscated or forfeited to public use, simply because they do not inclose them or resort to other active measures, forcible or otherwise, to keep the public from traveling over them. After having paid taxes, and contributed to the support of government and watched over their land for years, until they have become valuable and they wish to reduce them to actual possession, I do not know but that these owners will consider it a just and fair requital for the indulgence and permission they have granted the public, that their estate should be forfeited upon the plea that public policy and convenience so require. I do not know but that a generous public will demand this. Neither do I know but that legislation and judicial decisions based upon principles of this kind will stand the test of time and scrutiny; but until the experiment has been tried and found to be wise, just and proper in our situation as a people, I must be permitted to doubt all these things.

The other Pennsylvania decision cited by my associates, *Garrett v. Jackson*, 20 Pa. St. 331, and from which they extract a considerable part of the opinion by BLACK, C. J., was also a case of private way. I must say that I am surprised at this reference. Instead of being a way over open or uninclosed land, it was a way over premises which had been inclosed, and in the actual use and occupation of the parties, their ancestors and those under whom they claimed, for a period of about eighty years. It is true that the report does not say in so many words that the premises were inclosed, but it is obvious from the facts stated that they were, and had been during all that time. *Worrall v. Rhoads* was not even cited by court or counsel. Now I fully and cordially subscribe to the correctness of every word that Chief Justice BLACK says, as applied to the facts of that case. Nobody doubts or can doubt their correctness. So far as the owner of the land is concerned, the same facts would create either a public or private right of way in this state. I do not question it. But

the difficulty is, we are dealing with facts essentially different in their nature, and not justifying the application of the same principles. My brethren do not seem to understand this; and candor compels me, though with the greatest respect, to say that in this and in their other citations they seem not to consider or discriminate at all upon the facts of the case to which they refer. This, in common with the other authorities cited, appears to me to be entirely foreign to the question here presented.

*Wiggins v. Tallmadge*, 11 Barb. 457, was the case of a road twenty feet wide upon the boundary line between two adjoining land owners, ten feet upon the land of each, which had been opened and fenced out by the proprietors, and used by the public as a highway for forty or fifty years. Before the action was commenced, it had been recognized and adopted by the proper public officers as a highway. The court, in deciding the case, were governed by the very principles for which I contend. Speaking of highways by user or sufferance over the lands of individuals, and after referring to an English case the authority of which has been doubted, the court say: "Perhaps more now depends upon the intent than the time of sufferance. A dedication must be with intent to dedicate. There must be *animus dedicandi*, and when that is ascertained, whether by the express declarations and the acts of a party, or by user, it is sufficient. The books are full of such cases." And a great number of authorities are cited. The court held, as I think no one will doubt, that the fencing out of the highway, and use by the public with the knowledge and approbation of the owners of the soil, was sufficient evidence of an intention to dedicate.

In *Devenpeck v. Lambert*, 44 Barb. 596, the facts are stated in the opinion of the court as follows: "The successive owners of the land on which the road in question exists, permitted the people at large to use the same as a public highway, for twenty

years or more prior to the time the defendant obstructed it by building a fence across it. Such use was uninterrupted, *and with the consent of the several owners of the land.* The first owner declared, in substance, that he *opened* the road for the accommodation of his hotel and store, *and the public;* though at one or more times he may have prevented the overseers of highways from working it; but it was worked at other times by overseers of highways; *and the owner of the land referred to worked out his highway tax on it at least one year."* This was a highway, then, *opened* by the owner *for the accommodation of the public,* through lands which had previously been inclosed, used by the public for twenty years or more, *with consent of the several owners,* and ratified and adopted by the officers of the law having jurisdiction over highways. But the court in this case, after finding, upon these clear and undisputed facts, that there was a highway by dedication, acceptance and user, went further and pronounced an *obiter* opinion upon the construction of the statute, which is the same we have in this state. It is for this *obiter* opinion, I suppose, that my brethren must have cited the case; for otherwise they are most unfortunate. Now this case, or rather the *obiter* part of it, and that of *Worrall v. Rhoads* — this upon the construction of the statute, and that upon the question whether mere travel over uninclosed wild land is to be deemed an adverse user — are the only ones cited by my associates or to be found anywhere in the books, which, in my judgment, give the least semblance of support to their conclusions.

It seems hardly necessary to go, one by one, over the other cases cited. Those in 7 Johns. 106, and 17 id. 276, were both cases of streets in the village of Newburgh. The former came up in 1810, and the facts were, that the premises had been continuously used as a street since 1743, at which time a ferry was chartered and established at that point, " and that before the war, during the war, and for some time after the war, there

was no other ferry kept across the Hudson at Newburgh." In the latter, which came up in 1820, the point decided, as stated in the reporter's note, was, that "a road used as a common highway since the year 1777, but not recorded as such, is not a public highway within the meaning of the act relative to highways, so as to render an obstruction of it a nuisance." And *Smith v. The State*, 3 Zab. 130, was a case of the same kind, a street in the town of Patterson, which had been used and built up along a particular line, and the adjoining owners had acquiesced in the line built upon, and treated it as a true line of the street for forty or fifty years. I need not spend time to distinguish between cases of this nature—streets in large towns and villages, where property is valuable and owners make expensive improvements and accommodate themselves to the public use—and the case of a traveled track over open prairie, or through uninclosed woodland, the property of an individual here in Wisconsin. Every one will see the difference at a glance.

Of the other two cases cited, one in England, and the other in Maryland, it is enough to say, that neither appears to have involved the points here presented, nor to be in conflict with the positions here assumed.

Having thus examined the authorities, as well those supposed to be against as those for the views which I have felt compelled to take, or, at least, all such against them as my brethren have seen fit to cite and rely upon, it remains for me to examine the question as to the proper construction of the statute, the supposed effect of which enters so largely into the judgment and consideration of my brethren, and also to consider the criticisms in particular which they are pleased to bestow upon the language of the learned judge who delivered the opinion of the court in *The State v. Joyce*.

And, first, it occurs to me, after this study of the authorities and consideration of the principles upon which all highways

by user or prescription are founded, and by which they have ever been upheld, to observe what seems to me should be apparent to every one from the mere reading of it, and what this court decided in *Tomlinson v. Wallace*, 16 Wis. 224, that the statute in question is a mere statute of limitation, designed to fix the time within which a highway by user may be created, but not to declare the nature or kind of use requisite to that end. This is so obvious from the language of the statute, and the objects in view, that it seems to me that he who runs may read and understand. The common law rule with respect to the time required, adopted with reference to the time limited for the commencement of other real actions, varied in the different states. In some states twenty, in others twenty-one, and in others still, I believe, as high as thirty years' time, was required for that purpose. The legislature wished definitely to fix the time of user, and likewise to shorten the time usually prevailing, as to all future cases. These were the manifest objects of the statute, and there is not a word or syllable in it to show any other intention. There is nothing in it to show that the legislature intended to introduce any new principle into the law of user, or in the remotest degree to define what should constitute a user in this state. The legislature spoke of "roads used" in the common law sense of the terms *use* or *user* in connection with the same subject, and the statute means no more than if the legislature had said that "the use or user by the public, hereafter, for the period of ten years or more, of any road, shall make the same a public highway." The words now found in the statute mean the very same thing; and to ascertain the intention of the legislature, we are to go to the common law for our definition. All statutes are supposed to be enacted with reference to the rules of the common law upon the same subject; and words and phrases having a settled common law meaning, are, when found in a statute, presumed to have been employed in the same sense, unless the

contrary expressly appears. This rule of statutory construction is very familiar, and requires no citation of authority in support of it. Going to the common law, then, we find that " a road used," or " the use of a road " by the public, to become evidence of a right of way in the public, must be in hostility to the rights of the owner of the soil, and inconsistent with his then present use and enjoyment of his land. The user must be adverse. This proposition has, I think, been so fully established in the former part of this opinion, that no further comments are required. In view of this obvious meaning of the statute, repeatedly so interpreted by this court, and of these settled principles of the common law, I must confess my utter inability to comprehend 'how or upon what process of reasoning my brethren construe the statute as they do. They give us no reasons, but state their conclusion, that the legislature has, by this one act, overturned and annihilated all the cherished rules and presumptions of the common law prevailing from the earliest times to the present, with the unqualified assent and approval of all courts and legislative bodies, and by which the hitherto sacred rights of private property have been so long and so zealously guarded and protected. It is stated as a matter of grave doubt in the opinion, whether the assent or acquiescence of the owner is essential to constitute a highway by user. My brethren are inclined to believe that such assent is not necessary under the statute. In other words, they hold that the doctrine of adverse user is abolished, and that the assent or intention of the owner, expressed or implied, to appropriate his property to public use, need not be shown. This, in my judgment, is a proposition of most extraordinary and dangerous character. It is no less than affirming that the legislature may authorize the taking of private property for public use without the assent of the owner, and without compensation. It is affirming even more. It is affirming that the legislature has authorized private prop-

erty to be so taken and applied, and that such legislation is valid. · If, aside from the plain letter of the statute, any thing were needed to show that an adverse user was intended, and that the statute should be so construed, it seems to me that this consideration alone should remove all doubt. I cannot believe that this proposition was laid down with a full knowledge of its nature and effect, or with a due regard to the elementary principles and decisions governing the subject. I am compelled to think that the well considered and deliberate judgments and decisions of this court have been hastily and inconsiderately thrown aside and held for naught, for the crude and ill-digested *obiter* opinion of an inferior court of another state; and that but for such *obiter* opinion, which is not the law of the state where pronounced, as it evidently ought not to be the law anywhere, no such views would have ever found their way into the reports of this court. It is not the law of New York, as the writer of the *obiter* opinion seems to suppose, even where the intention of the owner to dedicate is manifest, that the mere use or travel by the public will create a highway chargeable to the public. Acceptance by the proper public authorities is necessary to constitute a highway in that state, as it is in this and in every other, where the laying out, making and repairing of highways and bridges are the subjects of special statutory regulations, and are committed to the jurisdiction and control of certain public officers. In *Oswego v. Oswego Canal Co.*, *supra*, the Court of Appeals unanimously say: "Any individual may lay out a way or thoroughfare through his own land, and may dedicate it as such to the public use. But such dedication does not impose upon the towns in which the lands lie, the duty of improving or keeping in repair as a public highway the lands so dedicated. This will conclusively appear from a reference to the provisions which have been in force in our highway acts for half a century. The power of

laying out, altering and discontinuing highways has been conferred exclusively on the commissioners of highways of the respective towns. It has been their duty to cause to be described and recorded in the town clerk's office all public highways not already on record; to assess the highway labor upon the inhabitants of the town; to divide the town into road districts, and to assign a due proportion of the labor to each district. It was the evident intent of these statutes, that the labor assessed should be exclusively bestowed upon the highways established by the town authorities and recorded in the town clerk's office. The duty of causing roads to be described and recorded evidently applied to such roads as had previously been laid out by public authority, and to such as had been used for highways for twenty years, and not to roads which had been laid out by individuals on their own lands. The whole structure of the highway acts forbids the idea that the town is bound to adopt and to keep in repair every road which an individual may think proper to open through his own land, although he may dedicate it to the public use in such manner as to preclude himself from shutting it up. Streets and roads dedicated by individuals to the public use, but not adopted by the local public authorities, or declared highways by statute, are not highways within the meaning of the highway acts; and there is no law by which any one can be compelled to keep them in repair. The English cases cited by the plaintiff's counsel on this point are inapplicable. In *Underwood v. Stuyvesant* (19 Johns. 186), Petrus Stuyvesant had surveyed and laid out a tract of land, within the city of New York, into city lots and streets, and had sold or leased part of the lots with reference to the survey. Mr. Justice PLATT, in delivering the opinion of the court, said: 'We must intend that every person knew that these streets could not be established as public streets of the city unless they were sanctioned by the corporation or other public agents.' But

it is unnecessary to look for authorities beyond the highway acts. They point out the only way by which highways chargeable to the public can be created." · In this case, the way in question had been open to the public use and travel for a period of about seventeen years before it became a public highway, and then it was made so by act of the legislature, declaring it to be a lawful highway. It was to this kind of statutory declaration, undoubtedly, that the court referred in the opinion. Our highway acts are verbatim copies of those of New York, and the decision applies with equal force here. And to the same point see, also, 14 Barb. 228; 16 id. 251; 37 id. 50; 19 Pick. 405; 3 Cush. 290; 4 id. 332.

And upon this same question of acceptance, the court of Vermont say: "But neither the mere fact of a dedication of land to the public as a highway, *nor the use of the land by the public as a road for public travel*, will be sufficient to impose upon the town a duty to keep the road in repair as a highway. The clearest and most unequivocal act of dedication would be wholly ineffectual without an acceptance of the dedication by the town, acting through its proper officers." *Fulsom v. Underhill, supra.* And to the same effect are *Tegarden v. McBean and Kibbee*, and *Commonwealth v. Kelly*, above cited; 13 Vt. 424; 14 id. 288; 29 Conn. 168, Opinions of two of the four judges; 2 Carter's Ind. 147; 2 R. I. 172; 1 Beasley, 299; 27 Vt. 454; and 21 Wis. 609.

Now, if mere use by the public for the purpose of travel will not create a highway chargeable to the public, when the owner of the land does intend to dedicate, how is it that such mere use will create one where the owner does not so intend, but the travel is merely permissive over uninclosed land? I must acknowledge that it is impossible for me to comprehend the logic of such conclusions. And it will be remembered that the question whether such mere use by the traveling public shall be deemed evidence of an acceptance is one of vastly more

importance in this state than in New York. The large tracts of uninclosed land in this state, and the freedom and facility with which people travel over them, make it so. And, besides, the statute law of this state, which does not exist in New York, making every town liable in damages for all injuries sustained in consequence of the insufficiency or want of repair of any highway in it, must also be considered. As stated in the *State v. Joyce*, these two things must go together. If the place is a highway, and the public have a right to use it as such, then the town must keep it in repair or pay the damages. This is a most important consideration, which seems to have been entirely lost sight of in this case. My conclusion, therefore, still is, that acceptance by the public authorities is necessary, and that such acceptance, which is manifested by the taking of actual corporal possession of the land by the authorities for a highway, becomes, as is stated in *State v. Joyce*, also evidence that the user is no longer permissive, but adverse. The taking of such possession, which may be termed the *pedis possessio* of the public, is such an open and notorious assertion of title and claim of right in the public, that the owner of the land is presumed to have knowledge of it, and thereafter, if he does not object to it or interfere to prevent it, it is a user with his assent and acquiescence, and so is adverse.

And here I wish to remark the difference between public and private ways. My brethren cite the cases indiscriminately, as if there was no distinction. The difference is this, that a way, to become public, must be duly and properly accepted by the public, while in the case of a private way no specific acceptance is necessary. The assertion of the right of private way by the party claiming it, is an acceptance of it so far as that can be deemed necessary. There is, however, in reality, no acceptance in the sense of that word as used with respect to public highways.

And here again I wish to say, that I do not think that mere

user by the public is any stronger evidence of a right of way in the public than the same user by an individual is of a right of private way in him. My brethren seem to be of opinion that it is stronger evidence; but the authorities make no such distinction. Indeed, considering the fact that public highways are universally taken possession of by the proper authorities, and worked and improved at the public expense, while private ways frequently, and perhaps in a majority of instances, are not so taken possession of, or worked and improved by the parties having the right, it would seem that mere user in the latter case ought to be stronger evidence of the right. Private ways frequently exist through the fields and inclosed lands of others, where the only evidence of the right is the long adverse use which has been enjoyed. I should say, therefore, with reference to the uninclosed lands in this state, that proof of mere travel over them would be as effectual to establish a right of private way as of public; and if it should be shown that a farmer has been in the constant habit of crossing the uninclosed land of his neighbor, or driving his cattle to a spring or brook thereon for water, for the length of time requisite to show a right of private way by user, then, according to the doctrine of my brethren, I do not see but his right of way and right to use the water of the spring or brook would be established. For one I must deny the correctness of any such doctrine.

It seems to me, therefore, that my brethren have erred in the construction put upon the statute, and that they have entirely failed in their criticisms of the opinion in *The State v. Joyce*. The construction there given appears to me well sustained both on principle and authority. Instead of being an unwarrantable judicial interpolation or amendment of the statute, I think it is the obvious, fair and natural construction of it, just what the legislature intended, and the condition and circumstances of the country required. It is a construction which does justice by the public and by individuals. It

infringes none of the settled rules of the common law, as the legislature did not intend to do, except in the matter of time, but leaves the question of user, assent and acceptance to be determined upon those familiar principles which in the long experience of the past have been found to be so wise, so just and beneficent. It adheres to the fundamental rule, that, unless by the owner's consent, private property cannot be taken for the public use without just compensation. It stands by the doctrine that where title or right is to be established by user or prescription, the consent of the owner, or his intention to devote the property to the public use, must be clearly and unequivocally shown, which, in the language of an authority above cited, may be by deed or unsealed writing, or by parol, or by acts of the owner *inconsistent and irreconcilable with any construction except such consent.* It stands by the doctrine, also, that under laws like ours, the way must be accepted by the proper public authorities before the public can become chargeable with the expense of maintaining it, or with the payment of damages for injuries caused by its insufficiency. It is in harmony with that wholesome principle of the common law upon which title by dedication, as well as other titles, are frequently said to rest, namely, " that, whenever a person has made representations, or pursued a line of conduct, with a view to lead, or induce others to adopt, a particular course of action, and such representations or conduct have produced that effect, they shall be held binding and conclusive against him, and he shall not afterward be permitted to retract or repudiate them, to the injury of those who have been induced thus to act." 19 Conn. 265 ; 9 Wis. 240.

On the other hand, the construction now given reverses all these rules, and, as I said at the outset, the statute becomes the source of untold mischief and vexation. It is a mischief and a wrong to the public, because it imposes upon the towns the necessity of keeping these tracks or ways in repair, or

paying damages for their insufficiency, although they may not have been assented to by the town, or ratified by its officers authorized by law to accept them. Hereafter the supervisors of each town will understand that it is their duty to record and work, not only all roads known to them as such, but also all tracks and ways within their towns which have been used by the public for ten years or more; and to do this, it will be needful that they make frequent inquiry, and ascertain and record the date or time of commencement of each track or way; and when they have done this, they must either fence the land, in case the owner does not see fit or refuses, or station watchmen upon it so as to keep all travelers off within the ten years, in order to prevent its becoming a highway; or, after that time, they must work the way and keep it in repair, or the town must abide the consequences of its insufficiency. This is the dilemma in which the towns are placed. But the wrong and mischief to private parties is no less. The uninclosed lands of every owner are shut out from the protection of the law. The impracticability or impossibility of inclosing them, or guarding them against the intrusion of travelers, for the period of ten years, operates as a decree of confiscation. The land is forfeited to the public and the owner's right gone, simply because it was not practicable or possible for him to inclose or watch it; or, if otherwise, because he was not so illiberal and base as to prohibit the travel which, while it did him no harm, was of some benefit to the public. It is greatly to the praise of the great body of settlers and proprietors of lands in this state, that such has not been their character. Illiberality and baseness of this kind have very seldom been exhibited. And it is also as greatly to our praise as a people, that the liberality of the settlers and proprietors of lands in this respect has as seldom been rewarded by any attempt on the part of the public to deprive them of their lands in consequence thereof. It has universally been regarded as a mere

license or indulgence, which could not extend beyond the time when the lands should be required for actual use and cultivation.

Such are some of the disastrous effects which must ensue and be visited upon the people, if the present, instead of the former decisions of this court, is to stand as the law of the state, and if the legislature does not interfere to remedy the evils. It will then remain to be seen, whether the advantages of this change of decision and unsettling of the law are an equivalent for its disadvantages, and whether the occasional acquirement of land necessary for a highway without the assent of the owner and without compensation to him, will more than equalize the losses of the public in being obliged to repair and keep in condition roads not needed, or to pay damages for their insufficiency. My own opinion is, that nothing will be gained, and that the balance of evil will be against the public. And besides this, I am strongly impressed with the idea that what is honest and fair between man and man is likewise honest and fair between a community and its citizens, and that the community should scorn to do an unjust act or take a wrong advantage, as much as an honorable man would. The gratuitous use of the land, no matter how long, by permission of the owner, and without the expenditure of either money or labor on the part of the public, constitutes no ground for despoiling the owner of his estate, but the very contrary. If the public wants land for highways, it is able to pay for it. It is not necessary that private property should be plundered for the purpose. If the land has never been paid for, and it is clear that the owner has never given it, nor intended to, it is no hardship that the public should be compelled to pay. Highways will not cease, nor public improvements end, if it is so compelled. It is a primary principle in our government that the public shall pay, and, instead of carrying the doctrine of dedication or gift any farther in order to avoid the performance of this act of simple justice,

I agree with the court in *Badeau v. Mead*, that it should be restricted. The court say in that case: "The doctrine of dedication has been carried quite far enough, and ought not to be extended. Persons who have from mere kindness suffered others to enjoy privileges in their lands, have eventually been coerced into parting with them entirely, without compensation, and to yield up as rights what they had previously suffered or allowed as favors; and the simple expression of an intention has often been distorted into a positive promise, and occasionally to those who have no distinct interest in its performance. Our title to lands is too important to be lightly lost upon slight presumptions. Before the owner should be deprived of his property, his intention to part with it should be clearly and unequivocally expressed. And for greater certainty it would be better, far better, that to be effective it should be evinced in writing, rather than by doubtful conduct or still more doubtful declarations."

And this very case, as I am informed by persons familiar with the facts, aptly illustrates some of the evils of the doctrines against which I contend. The plaintiff, a poor farmer, possessed of a single forty-acre tract of land, which he had fixed upon as his homestead, has, without his assent or the assent of those under whom he holds, and without compensation, been deprived of a piece of it, four rods wide, running from corner to corner through it, including by far the most valuable part of the land, and leaving the residue in such form as greatly to diminish its value. The injury to the plaintiff is a very serious one, while the sum required from each taxable inhabitant of the town to have made good the loss, would have been very trifling and insignificant. The inhabitants and officers of the town in this particular case, and gentlemen who differ from me in opinion as to what the law is, may perhaps be gratified at such a result, but I most certainly am not. I regard it as a dishonorable transaction, which should bring the

blush of shame to the cheek of any man who had acquired his neighbor's property in the same way.

One more observation on the opinion of my brethren, and I am done. After holding that mere use by the traveling public, regardless of the assent or acquiescence of the owner of the land, or his intention to dedicate, is sufficient under the statute to create a highway, they seem, in a subsequent part of the opinion, to take another and an entirely inconsistent position, and to hold that an adverse user was intended by the legislature. There seems to be some confusion in their minds upon this point. They criticise the opinion of this court given by Mr. Justice DOWNER, as being an unauthorized judicial incorporation of material provisions into the statute, at the same time themselves holding that the operation of the statute may be defeated by showing that the use was by permission. If the intention of the legislature was, that a highway should be created by mere user, not an adverse user, then it is manifest that this too is an unauthorized judicial incorporation of a material provision into the statute, and, to state the proposition as my brethren have done, the statute would be made to read thus: " And all roads not recorded which shall have been used as public highways twenty years or more, and roads not recorded which shall hereafter be used ten years or more, shall be deemed public highways: *Provided, however, that no such roads shall be deemed public highways where it shall appear that the use was by permission of the owner of the land.*" If it be unauthorized in one of these ways to modify and control the strict letter of the statute, so as to make it speak the true and obvious intention of the law makers, it must be equally unauthorized in the other way, and it is after all but an exchange of errors. One alleged error of this court has been cured by the commission of another error of the very same kind, and of equal magnitude. It is obvious that the statute must mean one thing or the other. Either a mere user which

may be denominated a user without regard to any surrounding fact or circumstance, or else an adverse user, was intended. The statute cannot mean both. I am at a loss to ascertain the views of my brethren upon this point. At one time I am informed that a mere user was intended; but at another, that user by permission will not do, which signifies that an adverse use was intended. Taking the views last expressed by them as their true and real views, which is perhaps the fairest way to avoid the difficulty, then it may be that the difference between us on this point of statutory construction is not so very great. The question between us then would be as to what facts are necessary to constitute an adverse user — what acts on the part of the owner of the land, and what on the part of the public authorities, must be shown in order to establish it; — and upon this question it has already been seen that we differ very widely.

It is for reasons like these that I have been compelled to dissent from the decision of the majority of the court in this case. I hold, and must still continue to hold, notwithstanding the judgment here given, that the former decisions of this court announce the sound, true and just rules of law applicable to the case. I do not think that those decisions should be overruled, but do agree that this one should never have been made.

I think the judgment of the circuit court should be affirmed.

*By the Court.* — Judgment reversed.